# THE TERRITORY OF HAWAII *v.* ILENE WARREN, ALIAS "SPEED" WARREN.

## No. 2376.

ARGUED JUNE 30, 1939.                    DECIDED OCTOBER 20, 1939.

### COKE, C. J., PETERS, J., AND CIRCUIT JUDGE BROOKS IN PLACE OF KEMP, J., DISQUALIFIED.

Ilene Warren, alias "Speed" Warren, was indicted by the grand jury of the Territory of Hawaii on August 5, 1937, for the crime of murder in the second degree. The alleged crime arose out of the death of Wah Choon Lee, a police officer of the City and County of Honolulu, at the town of Wahiawa, on August 3, 1937. The defendant entered a plea of not guilty and a trial before a jury resulted in a verdict finding the accused guilty of the crime of manslaughter. Sentence was imposed accordingly. The cause is now before this court upon a writ of error sued out by the defendant. Accompanying her application for the writ are 65 separate assignments of error.

At the time of the alleged crime and for more than a year prior thereto the defendant was engaged in conducting a house of ill fame on Muliwai street, Wahiawa, City and County of Honolulu. On or about June 1, 1936, the defendant had some difficulty with the police and following this incident she told one Lou Rodgers, an inmate of her house, that she intended to wire her house with electricity for the purpose of keeping drunken soldiers, burglars and the police away. At another time she expressed similar intentions to Lucy McGuire, a maid working in her establishment. Within a short time following these statements defendant engaged John Kiehm, a mechanic, to install a metal plate on the outside of the front door of the house and to connect it with an electric current with a capacity of 600 volts. This device, so installed at the direction of defendant, was controlled by a knife-type switch located inside of the house adjacent to the front door. If the electric current was on at full voltage and a person, under the circumstances testified to in the case at bar, came in contact with it, at the same time making a ground thus completing the circuit, he would receive the full charge of electric current from the

transformer and the voltage passing through his body would become imminently dangerous to life.

That the defendant was aware of the dangerous nature of the electric shock device which she had installed at the front door of her house is testified to by witness Penland, an inmate of the house, who related on the witness stand a conversation between herself and the defendant during which the defendant cautioned the witness never to touch the apparatus, stating that it was charged with 600 volts of electricity. The defendant further stated to the witness that the device was installed for the purpose of keeping drunks away and to be used "in case of a raid."

On the evening of August 3, 1937, between eight and nine o'clock, a group of police officers of the City and County of Honolulu, under the command of a captain of police, Clarence Caminos, arrived near the premises of the defendant. In this group of officers were E. J. Burns and the deceased, Wah Choon Lee. Officer Burns entered the defendant's house by invitation of Miss Penland, one of the inmates acting under the instructions of the defendant, the other police officers remaining near defendant's house on adjacent premises. The purpose of the presence of the police was to arrest any of the inmates of the defendant's house found committing a crime and, by prearrangement, it was understood that in the event Officer Burns made an arrest and required assistance he would sound his police whistle and the officers stationed outside of the premises would enter and assist him. Within a short time after being let into the house of defendant Officer Burns observed what he believed to be a commission of a crime by Billie Penland and attempted to place her under arrest. Meeting with resistance and interference by defendant, Burns sounded a call for help. The officers, under the command of Captain Caminos, advanced to the front door of defendant's house and upon hearing the

noise of a scuffle within demanded admittance. There being no compliance, Wah Choon Lee reached to pull the door open and his hand came in contact with the metal plate on the front door. He at once fell backwards upon the ground and expired within a few minutes. A short time after the death of Wah Choon Lee the defendant admitted to witness Penland that she had pulled the electric switch. The evidence shows that Wah Choon Lee's death was caused by electrocution.

Manslaughter is defined as follows: "Whoever kills a human being without malice aforethought, and without authority, justification or extenuation by law, is guilty of the offense of manslaughter." R. L. H. 1935, § 5996. Under an indictment for murder or manslaughter a jury may return a verdict of manslaughter as the facts proved may warrant. (See R. L. H. 1935, § 5995.)

Defendant's assignments of error numbers 1, 2, 4, 6, 7, 10, 16 and 17 may properly be considered together. They complain of the action of the court in permitting the prosecution to introduce evidence which it is claimed reflected upon the character and reputation of defendant in that it tended to prove that prior to the commission of the crime alleged in the indictment she was engaged in operating a house of prostitution. Some of such evidence doubtless had that tendency. It is of course a well-recognized doctrine that where a defendant in a criminal case has not placed his character in issue the State is not permitted to introduce evidence to show a bad character. (See 30 C. J. 170.) Counsel for the Territory argued that this evidence was not introduced for the purpose of attacking the defendant's character and the evidence reflecting upon her reputation was merely incidental to other facts which were relevant and material. The trial court made it clear that the character of the defendant was not in issue and that the evidence com-

236

plained of should not be considered by the jury as reflecting upon the defendant's past reputation. It is not uncommon in the trial of a case that in order to establish an important fact the character of a party may incidentally be impugned. This, however, does not warrant the exclusion of the evidence. Such seems to be the present case. About a year prior to the commission of the alleged crime the defendant had conceived the idea of electrifying her house (which at that time was a place of vice and ill fame) in order to protect her premises from raids by the police. She at that time made statements to others of her plans and purposes. In order therefore to prove these facts evidence that the defendant was at that time conducting a house of prostitution was brought out. The court instructed the jury that such testimony was for the purpose of fixing a time and place and establishing motive on the part of the defendant but should not be considered by the jury as putting in issue the character of the defendant. If, as it was claimed by the prosecution, the defendant, long before the day of the alleged crime and for the purpose of forestalling police raids on her premises, caused the door leading into her building to be charged with sufficient electric voltage to cause death and by reason of this the deceased, Wah Choon Lee, was killed upon the night in question, it was proper for the prosecution to show these facts, although in divulging them to the jury the fact that defendant at that time was conducting a house of prostitution came to light. The reflection upon her character could not stand in the way of receiving the testimony if it had evidential value for other purposes. Evidence which is relevant is not rendered inadmissible because it proves or tends to prove another and distinct offense. (*Johnston* v. *United States*, 22 F. [2d] 1.) Professor Wigmore illustrates the rule in this fashion: "Suppose A to be charged with robbing the till in a store of

which he is a sale-clerk; and suppose the facts to be offered against him (1) of having stolen the key of the till in the preceding week; (2) of having falsified his sale-book recently; (3) of having suffered large losses in gambling. From the point of view of the foregoing subject, these acts would all tend to show that he was of a dishonest and reckless disposition, and therefore disposed to steal from the till if opportunity offered. But from that point of view such acts would be wholly inadmissible, either in proving the act charged in opening, or in rebutting his evidence of good character * * *. But that is not the only possible point of view. These acts may be relevant in other ways to show the commission of the crime, without in any way employing or suggesting their inference as to his character. They may justify other inferences which go to show his doing of the act charged. Thus, the purloining of the key may found an inference of Design or Plan,—a plan to use the key in some unlawful way for obtaining access to the till; or it may show Knowledge,—knowledge of the whereabouts of the till and of its valuable contents. So the falsification of his sale-book may show a Motive,—the desire to prevent his larcenies from being discovered; or it may show Design,—a general design to obtain money from his employers unlawfully. So the gambling losses may show Motive in another way,—the need and desire of money at any cost, to pay his losses. Whatever tended ordinarily to show such Knowledge or Design or Motive would otherwise have been admissible; and these acts are merely instances, from a variety of evidence, of classes of facts which would be evidential for their respective purposes." 1 Wigmore, Evidence (2d ed.), pp. 456, 457.

The proper practice in cases of this kind was well-stated by Mr. Justice Brewer (afterwards a distinguished associate justice of the supreme court of the United States)

in *The State* v. *Adams*, 20 Kan. 311, 319, where he said: "It is clear, that the commission of one offense cannot be proven on the trial of a party for another, merely for the purpose of inducing the jury to believe that he is guilty of the latter, because he committed the former. You cannot prejudice a defendant before a jury by proof of general bad character, or particular acts of crime other than the one for which he is being tried. And on the other hand, it is equally clear, that whatever testimony tends directly to show the defendant guilty of the crime charged, is competent, although it also tends to show him guilty of another and distinct offense. * * * A party cannot, by multiplying his crimes, diminish the volume of competent testimony against him. A man may commit half a dozen distinct crimes, and the same facts, or some of them, may tend directly to prove his guilt of all; and on the trial for any one of such crimes it is no objection to the competency of such facts, as testimony, that they also tend to prove his guilt of the others." (See also *People* v. *Thau*, 219 N. Y. 39, 113 N. E. 556.)

Assignments of error numbers 13, 14 and 15 are wholly without merit. They question the ruling of the court permitting Officer Burns to give evidence of what he saw, heard and did in the house of the defendant in her presence at or about the time of the death of Wah Choon Lee. We find no basis for defendant's assertion that Officer Burns entered her house unlawfully and that his evidence thus became inadmissible. This subject will again be adverted to under assignment of error number 29.

Assignment of error number 16 challenges the ruling of the court permitting the introduction of the evidence of Billie Penland, an inmate of defendant's house, to the effect that on the evening of the commission of the alleged crime the defendant was operating a house of ill fame. This testimony, as well as that of Officer Burns, referred

to in the preceding paragraph, was a part of the *res gestae* and was competent and material.

Assignment of error number 29 involves the denial of defendant's motion to strike from the record the testimony of Officer Burns relating what happened in the house of the defendant. The basis of the motion is that the witness was a trespasser upon the premises of defendant in violation of her rights under the Federal Constitution. It is settled law that evidence obtained by an officer as the result of an illegal entry into the premises of another is inadmissible and violative of the fourth Amendment to the Constitution. (See *Gouled* v. *United States,* 255 U. S. 298; *Amos* v. *United States,* 255 U. S. 313; *Ter.* v. *Ho Me,* 26 Haw. 331.) In the present case had Officer Burns obtained the information to which he testified in violation of the search and seizure clause of the Constitution the same, of course, should have been excluded but the evidence of both Officer Burns and the witness Penland was to the effect that Burns not only did not enter the premises by force or stealth or other unlawful manner but was voluntarily admitted into the building by Miss Penland at the direction of the defendant. The officer was therefore lawfully within the building and it was competent for him to testify not only to what occurred but to what he had observed therein. (See *Johnstone* v. *United States,* 1 F. [2d] 928; *Blanchard* v. *United States,* 40 F. [2d] 904; *United States* v. *Smith,* 43 F. [2d] 173.)

A case in point is *Marshall* v. *City of Newport,* 200 Ky. 663, 255 S. W. 259. In that case, similar to the one at bar, police officers had entered the house of defendant and discovered evidence indicating that defendant was maintaining a house of prostitution. It was urged that this evidence was incompetent because the officers had entered the house without a warrant or authority of law. Passing upon the point, the court said: "The officers had

no search warrant, and admittedly no offense was committed in their presence, but their evidence shows, and it is not contradicted by appellant, that the entry into and examination of the house was with the consent of appellant. In these circumstances the testimony was competent."

Assignments of error numbers 5, 8, 9 and 18 challenge the rulings of the trial court permitting witnesses Rodgers, Kiehm and Scott to describe the electrical equipment previously installed in the house of defendant and which had been suppressed by order of the court. These assignments lack clarity but by reference to the transcript it appears that these witnesses, in giving their testimony, made reference to the equipment which had been suppressed by the court. They stated, however, that their testimony was based upon their respective individual knowledge of the appearance of the equipment gained independently of the illegal seizure of it. Defendant relies upon the decision in *Silverthorne Lumber Co. v. United States*, 251 U. S. 385. In that case the court pointed out that information which was obtained through an illegal search and seizure was incompetent and inadmissible. But the court went on to say: "This does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed." The trial court found that the electrical equipment had been illegally seized by the government officers and ordered it suppressed and returned to the defendant. This, however, did not render incompetent the evidence of witnesses whose knowledge of the facts to which they testified came from an independent source, wholly apart from any knowledge gained by observation of the equipment subsequent to the illegal

seizure. (See *Cohen* v. *United States,* 36 F. [2d] 461; *Wiggins* v. *United States,* 64 F. [2d] 950.)

Assignments of error numbers 20 and 23 fail to comply with requirements of rule 3 (b), as amended in 1938, which provides: "When the error alleged is to the admission or to the rejection of evidence the specification shall state the substance of the evidence admitted or rejected." In both instances the court overruled objections to questions propounded to witness Caminos by the prosecuting attorney. But neither of the assignments indicates what, if any, evidence was admitted or rejected by the court. This plain violation of the rule precludes us from considering the questions attempted to be raised by defendant under these assignments. (*Ter.* v. *Young,* 32 Haw. 539; *Houston* v. *Southwestern Tel. Co.,* 259 U. S. 318.)

Assignment of error number 24 brings up for review the ruling of the trial court which permitted Officer Caminos to testify to what he thought when he heard the police whistle sounded by Officer Burns within the defendant's house at the time Burns, as he testified, was endeavoring to place the Penland woman under arrest. This evidence was offered by the prosecution for the purpose of justifying the entry of Caminos into the premises of defendant. Usually the impressions formed in the human mind—in other words what a person may think— as distinguished from evidence of what he may have done, are inadmissible, although there are exceptions to this doctrine. It is the modern rule that, where material and relevant to the issue, a party may testify directly as to his motive, intent or belief. (See 2 Jones, Evidence [2d ed.] § 708.) "The condition of a man's mind with reference to what he thinks, feels, believes, intends, and his motives, is always a fact, and it is a fact which is often required to be ascertained both in civil and in criminal cases." *Gardom* v. *Woodward,* 44 Kan. 758, 25 Pac. 199. If, in the case

at bar, it is proper to hold that the result of a mental process of witness Caminos was, under the circumstances, incompetent, the failure to exclude the testimony was in no way prejudicial to the defendant. This testimony added nothing to the case of the prosecution nor did it have any bearing upon the guilt of the accused. Officer Burns testified that after having made the arrest he sounded his police whistle as a signal to call Caminos to his assistance, in accordance with their prearranged plan. That Caminos, upon hearing the whistle, believed that an arrest had been made and that the officer required help, may, and perhaps did, cause Caminos to go to the aid of Burns but from our view of the case the motives of Caminos shed no light upon the issue in the case and while this evidence might well have been excluded its introduction was entirely innocuous.

Defendant's assignments of error numbers 41, 42 and 43 relate to the same general subject and will be consolidated. They complain of the giving by the court the prosecution's instructions numbers 12, 12 A and 14. The prosecution's instruction number 12, as modified by the court, reads as follows: "You are instructed that Section 5404 of the Revised Laws of Hawaii 1935 provides as follows: 'Policemen, or other officers of justice, in any seaport or town, even in cases where it is not certain that an offense has been committed, may, without warrant, arrest and detain for examination such persons as may be found under such circumstances as justify a reasonable suspicion that they have committed or intend to commit an offense.' You are hereby instructed that the term 'reasonable suspicion' as used in said statute is construed by the Court to mean probable cause. You should consider this law together with all the evidence in the case in determining whether or not the deceased, Wah Choon Lee, was lawfully upon the premises of the defendant at the

time in question." Instruction number 12 A reads: "You are instructed that if you believe from all the evidence. and beyond a reasonable doubt that the deceased was acting as a police officer and that he went upon the premises of the defendant for the purpose of assisting. another police officer, and that the deceased in so doing acted under such circumstances as would justify a reasonable suspicion based upon probable cause that some person or persons upon the premises had committed or intended to commit an offense against the laws of the Territory of Hawaii, then you must find under such circumstances that the deceased, Wah Choon Lee, had a lawful right there and it was his duty to enter upon the premises of the defendant and you must not under such circumstances consider the deceased as a trespasser." Instruction number 14 reads: "You are instructed that if you believe from all the evidence and beyond a reasonable doubt that the deceased was acting as a police officer and that he went upon the premises of the defendant for the purpose of arresting and detaining for examination such persons as he might have found thereon, and that the deceased in so doing acted under such circumstances as would justify a reasonable suspicion based upon probable cause that some person or persons upon the premises had committed or intended to commit an offense against the laws of the Territory of Hawaii, then you must find under such circumstances that the deceased, Wah Choon Lee, had a lawful right there and it was his duty to enter upon the premises of the defendant and you must not under such circumstances consider the deceased as a trespasser. And in this connection you are further instructed that the fact as to whether or not there was a 'no trespassing' sign upon the premises at the time, would not alter the right of the deceased, Wah Choon Lee, or the other police officers with him, to be upon the premises in question." The court also

gave defendant's instruction number 34, as follows: "You are instructed that a person in his own dwelling house may use such means as are necessary even to the taking of life, to prevent a forcible and unlawful entry into his home."

Due, apparently, to a misconception of the law applicable to the case, the court and counsel proceeded upon the theory that if the deceased was a trespasser upon the premises of the defendant on the evening in question the defendant was justified in taking his life by means of the deadly instrumentality which she had caused to be placed and maintained at the entrance to her house and this misconception accounts for the giving of these four erroneous instructions. The recognized rule is that "A person is not justified or excused in placing spring guns or other like instruments of destruction for the protection of his property where he would not be justified in taking life with his own hands for its protection or for the protection of his life or person, as in the case of mere trespass. But where he would have a right to slay another who is endeavoring with force and violence to commit a felony on the property, a killing committed by means of such instrument would likewise be justifiable." 30 C. J. 86, 87.

No case parallel to the present one has previously had the attention of the courts of this Territory although in other jurisdictions prosecutions for homicide involving similar facts are not uncommon. Most frequently, however, these are instances where death was caused by the discharge of a spring gun so placed and equipped that it would be discharged in the direction of an intruder attempting to open a door, window or gate or by his coming in contact with a wire stretched across a passage or pathway. But the underlying general principles of law apply to all similar cases regardless of the type of

instrument of destruction employed. In *State* v. *Beckham,* 306 Mo. 566, 267 S. W. 817, the defendant set a spring gun to protect his soft-drink stand, which contained property of small value, and was held guilty of manslaughter for the death of a youthful burglar. This case and *The State* v. *Countryman,* 57 Kan. 815, 48 Pac. 137; *State* v. *Patterson,* 45 Vt. 308, 12 Am. Rep. 200; *State* v. *Plumlee,* 177 La. 687, 149 So. 425, and many other decisions, support the doctrine that the right of a person to defend his home does not license him to kill with impunity. The use of weapons or force dangerous to life and limb to evict a trespasser is privileged only if the actor reasonably believes that the threatened intrusion involves a danger to the life or limb of some inmate of the place or the commission of some other grave offense. *Bray* v. *State,* 16 Ala. App. 433, 434, 78 So. 463, was a case where the deceased, a trespasser, had forcibly entered defendant's home in the nighttime and it was held that this alone would not justify the taking of his life, the court saying: "The deceased was a trespasser when he entered the defendant's habitation forcibly and against defendant's objection, but this fact in itself could not justify the taking of his life. Unless deceased was killed in the act of committing a felony, to justify the defendant in taking his life, it must be shown that the defendant or some member of his household was placed in impending danger of suffering death or serious bodily harm, or that the circumstances were such as to impress a reasonable man with the belief of such impending danger, and if without such danger the defendant committed a murderous assault on the deceased, using more force than was necessary to eject him from the defendant's place of habitation, or save himself or those of his household from such peril and thus caused the death of the deceased, the defendant would not be guiltless." (See also 1 Bishop New Crim.

L. §§ 839, 841, 850.) This branch of the law of homicide is made the subject of interesting and useful articles appearing in 35 Yale L. J. 525-547 and in 9 Col. L. Rev. 720-722.

While it is often said that a person may rightfully use as much force as is necessary for the protection of his person and property, it should always be borne in mind that this rule is subject to this most important qualification—that he shall not, except in extreme cases, endanger human life or do great bodily harm. It is not every right of person, and still less of property, that can lawfully be asserted or every wrong that may rightfully be redressed by extreme remedies. There is a reckless—a wanton—disregard of humanity and social duty in taking or endeavoring to take the life of a fellow being in order to save oneself from a comparatively slight wrong. A person may not kill because he cannot otherwise effect his object, although the object to be effected is right. He can only kill to save life or limb or prevent a great crime or to accomplish a necessary public duty.

Defendant argues at length that section 5404, R. L. H. 1935, contravenes the provisions of the fourth amendment to the Federal Constitution because it permits the arrest of a person accused of a misdemeanor, even though the offense had not been committed in the presence of the arresting officer, citing *Poldo* v. *United States,* 55 F. (2d) 866, and other decisions of the federal court.

Based upon this assumption of the unconstitutionality of the local statute the defendant concludes that it was error to give to the jury the prosecution's instructions numbers 12, 12 A and 14, as modified by the court. While we believe that these instructions might well have been refused by the court, the basis for such refusal would have been on the grounds not only that they were unsound in law but were excessively favorable to defendant. The

same may be said of defendant's instruction number 34. These four instructions conveyed the plain inference that if the deceased, Wah Choon Lee, was a trespasser upon the premises of defendant at the time he came to his death the homicide was justifiable. As already indicated, the law does not sustain any such theory. There is nothing in the record in this case which could, in the remotest degree, support a finding that the deceased, when he approached the door of defendant's house on the night of the tragedy, intended to commit a felony or that the defendant, or any member of her household, was placed in impending danger of suffering death or serious injury. The attending circumstances were wholly insufficient to justify a belief of any such impending danger in the mind of a reasonable person. Indeed the defendant made no claim at the trial that she apprehended any danger because of the presence of the deceased or any of the other police officers. The record clearly indicates that the deceased was not a criminal or felonious intruder but that he entered upon the premises of the defendant solely for the purpose of assisting a fellow officer who had made an arrest and had called for help. The constitutionality of section 5404, R. L. H. 1935, was not in issue and that question should not have been injected into the case. While prosecution's instructions numbers 12, 12 A and 14 might well have been refused by the court, their effect was to accord the defendant an advantage to which she was not entitled. But of this she cannot complain. For the same reason defendant's instructions numbers 16, 18 and 28 were properly refused.

The record in this appeal presents a clear case of a person who deliberately placed a deadly instrumentality at the front door of her house through the medium of which a human life has been taken unlawfully. We can

conceive of no reason why the guilty party should not now suffer the penalties of the law.

Having examined carefully the entire record in this case and after giving full consideration to all of defendant's numerous assignments of error, we conclude that the defendant not only had a fair trial but the evidence abundantly sustained the verdict of the jury.

The judgment and sentence of the lower court are affirmed.

*C. B. Dwight* (also on the briefs) for plaintiff in error.

*K. E. Young*, Assistant Public Prosecutor (*C. E. Cassidy*, Public Prosecutor, with him on the brief), for the Territory.