**UNITED STATES v. WEISS et al.**

District Court, S. D. New York,
May 20, 1940.

John F. Dailey, Jr., Sp. Asst. to Atty. Gen., for the United States.

Lloyd Paul Stryker, of New York City, for defendants Joseph J. and Alfred L. Weiss.

Jacob W. Friedman, of New York City, for defendant Martin Gross.

Schwartz & Frohlich and Theodore Kiendl, all of New York City, for defendant Dr. Maximilian Goldstein.

BYERS, District Judge.

Three defendants in this cause are now under a plea of not guilty to an indictment found by a Grand Jury of this district on March 22, 1940. The offenses alleged in that indictment are substantially the same as those discussed in the case of Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298.

Four defendants named in the earlier case, Nelson, Berger, Messman and Spitz, are not defendants at bar, and Krupp also named therein has since died.

Upon entries of the pleas herein on May 6, 1940, the following stipulation was handed to the Court, and filed with the clerk. I shall read the stipulation into the record. It bears the title of this cause and continues:

"Whereas the defendants in the above named case intend to apply to this Court for an order:

"A. Suppressing all records and transcripts of intercepted telephone messages;

"B. Directing the United States to submit to an examination with respect to the

uses made by it of such intercepted messages and facts ascertained by it as a result of such use;

"C. Suppressing all evidence obtained by the United States as a result of the use by it of said intercepted messages, and suppressing the testimony of all witnesses whose recollection was refreshed or whose testimony was in anywise aided by means of said intercepted messages;

"D. For the physical return of the records, recordings of said intercepted messages and the transcripts thereof;

"E. An order impounding and sealing of records on appeal from the former conviction;

"F. Dismissing the indictment pending against said defendants upon the ground that it should appear that said indictment is based upon evidence illegally obtained by means of said interception of telephone messages;

"G. Suppressing all testimony which resulted from information derived from such intercepted messages;

"Now, therefore, it is hereby stipulated and agreed by and between the attorneys for the respective parties hereto as follows:

"1. Defendants may make the said application to the trial court immediately prior to the beginning of the trial of this action and before a jury is impaneled. The said application may be made by said defendants orally in open court.

"The United States does not oppose the granting of said application being made by defendants as aforesaid at that time, and hereby waives any requirement that such application be made by means of written motion papers in advance of trial. The said applications made to the trial court as aforesaid shall, in all respects, have the same force and effect as though made in advance of trial.

"Dated, New York, April 25, 1940."

In accordance with the stipulation the requests which are comprehended in the defendants' motions have been disposed of by the Court as follows:

■ Subdivision A is granted.

■ Subdivision B is granted, and pursuant thereto this hearing has been conducted.

Subdivision C: This is granted as to the following:

Suppressing all evidence obtained by the United States as a result of the use by it of said intercepted messages. The balance of Subdivision C is denied, and the reasons for the denial will be discussed.

■ Subdivision D is denied, because it contains the word "return", which indicates that the desired records and recordings were originally the property of the defendants, which is not the fact. It is impossible to return to them something that they have never possessed.

Subdivision E is not understood. I am unable to make a ruling on it. I do not understand why the records on appeal should be impounded and sealed.

■ Subdivision F, which seeks the dismissal of the indictment, is denied on the ground that if that had been appropriate the Supreme Court would have ordered it.

Subdivision G: Decision in respect to this subdivision is reserved so as to permit of specific rulings at the trial.

As has been stated a hearing pursuant to the foregoing motion was begun before the trial court and continued on all court days through May 16, 1940 with the exception of May 7th when no hearing was held at the request of counsel.

The effort was made to comply with the requirements stated in Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 268, 84 L.Ed. 307, that the trial judge give to the accused an opportunity to demonstrate that a substantial portion of the case against them is "fruit of the poisonous tree". By this is understood that a substantial portion of the government's present case is to be identified with, so as to form a part or product of the intercepted telephone messages, the receipt into evidence of which resulted in the reversal of conviction in the first case.

The defendants called and examined the following witnesses:

Frank E. Shea, post office inspector.

Nahum A. Bernstein, attorney for several insurance companies affected by the alleged frauds.

Herman Berger, a defendant in the first trial who pleaded guilty and testified as a government witness.

Benjamin Nelson, similarly.

Morris Spitz, similarly.

Hirsch L. Messman, similarly, to be described.

John F. Dailey, Jr., special assistant to the Attorney General, who was actively in charge of the first case in its preparation and trial and is in active charge of this case.

Lamar Hardy, former United States Attorney for this district, who directed the former prosecution.

Hobart A. Simpson, an employe of a private detective agency, who supervised the installation of and was responsible for the operation of the recording devices.

Sylvia Schwartz, an employe of the insurance company lawyers.

During this hearing there have been delivered to the defendants transcripts of all intercepted telephone messages which were heard at the former trial, or in preparation therefor, by all witnesses; also summaries of all such messages and those portions of the trial memoranda, called trial briefs, prepared in the office of the United States Attorney for use at the trial, in collaboration with various witnesses. The transcripts were marked Weiss Exhibits C to L, inclusive, and Exhibit V.

The telephone interceptions began on January 29, 1937 and ended on June 30th. During that period there were intervals between April 16th and May 6th as to Messman's wire and from January 29th to March 8th and from April 16th to May 6th as to the Weiss wires, during which no telephone messages whatever were intercepted, and the facilities for interception were out of service.

As to the alleged presentation of fraudulent claims, all but those presented by Berger are said to have undergone fabrication many months prior to the first installation of the intercepting device. The testimony of Inspector Shea, concerned with the completeness of the government's case so far as alleged fraudulent use of the mails is concerned during the months of November and December 1936, is quite convincing. It was circumstantial as to the files, records and conversations overheard under circumstances to be alluded to; also the extended confession of a former participant in the transactions involved, and others of like nature.

The conversations which were overheard in a certain room were listened to without the aid of telephone interception. The results of that process may be likened to what might have been gathered from listening through an open door or window.

So far as I know even the most meticulous concern for the right of private and confidential pursuit of criminal enterprise via a public utility is not impaired by the reception of such evidence as this. Nor do the defendants argue to the contrary. The evidential status of such materials as are alluded to upon the trial of this cause is not intended to be forecast by this reference. Those materials have not been the subject of critical examination during this hearing, but the fact is deemed to have been demonstrated that such materials did exist and are available to the government for appropriate tender at the appropriate time.

The defendants urge that neither Berger, Nelson, Spitz nor Messman should be permitted to testify at all because each of them was exposed to the contamination of one or more intercepted telephone conversations in which he or someone else participated either by hearing the reproduction or by knowing that such was available prior to making a confession, prior to the entry of a plea of guilty, and prior to giving testimony concerning the actual commission of the offenses charged.

It may be said at once that in the absence of a formula whereby the mental operations of another individual may be charted so as to present a convincing portrayal thereof for the purpose of judicial review, the task of studying or probing the contents of the mind of any of these persons when they decided to make disclosure of their several activities is quite beyond the limited capacity of the present trial judge.

All that can be done is to weigh the reasonable probabilities as exposed, in the light of the case as a whole. It must be borne in mind that prior to the employment of wire tapping, defendants did, on occasion, confess, plead and testify as government witnesses; so that wire tapping did not initiate that practice; also that each defendant who did those things, namely, confess, plead and testify, acted purely in response to motives of self-interest; he had something to gain by so doing, and his conduct was entirely free from any altruistic blemish.

Finally, the simulation of heart disease or impairment, the fabrication of electrocardiograms, the filing of claims known to be false, the entries into hospitals as patients without reason, and the maintenance of other activities comprehended in

the expression "build-up" and the confederation of several persons to those ends, constitute tangible physical actions separate and apart from what may have been said about them over the telephone before or after a given incident had occurred. Evidence of the things actually done should be deemed to be of the substance.

What was said between the actors would tend to establish, not that the things were done at all, but that they were arranged for perhaps on a given day, or were the subject of comment at a precise time.

■ In the language of Mr. Hardy, the telephone conversations supplied corroborating details. Perhaps they gave dramatic color to that narrative; perhaps without them the incidents themselves would have appeared in less convincing outline; but unless it can be said that the incidents themselves could not be shown at all in the absence of the telephone conversations, it would seem that the government should not be forbidden to present its case.

It is necessary to reflect that had the Supreme Court not so sensed the situation, the indictment in the first case would have been the subject of a direction to dismiss. What was not ordered by the Supreme Court will not be ordered by this court.

Before mentioning the witnesses by name it is necessary to recall also that the purpose of this hearing is prospective and not retrospective. The subject matter of a given line of inquiry at the last trial may be capable of complete avoidance in the examination of a given witness in this, without sacrifice of essential objectives.

In the light of the foregoing can it be said that there may be developed from the following witnesses proof germane to the issues at bar having origins independent of the intercepted telephone messages?

Answering this question with respect to each of the individuals named:

Berger: As to him it has been demonstrated that the government can offer such evidence touching his good health when he claimed the opposite, and that he knew of the falsity of his claim for disability. The files of the insurance companies affected supply most, if not all, of this evidence. Berger should be permitted to testify as to the essential facts of his connection with the offenses charged so far

as he may recall them without the aid of the proscribed media.

Spitz: As to some details his memory was doubtless sharpened by listening to the reproduction of certain telephone conversations. However, his confession was made also in view of certain premium notices, medical forms and other papers and records. During March and April of 1937 his wife had told him that she was disgusted with his insurance company dealings and that she might go to District Attorney Dewey's office and expose the whole thing. At least six days before his arrest he and his wife prepared letters to the insurance companies withdrawing all claims, and mailed at least one. It is impossible to conclude that at the time of his confession his mind was a blank except for the matters referred to in the telephone taps. Certainly he should be allowed to testify at this trial as to the incidents that he can relate within the requirements of legal evidence and without reference to prohibited means to assist his recollection.

Messman: This man was one of the principal offenders, in that he used his professional equipment as a physician to aid in the accomplishment of the frauds practiced upon the insurance companies. He revealed at this hearing a complete mental picture of the entire series of events involved. The only incident as to which his memory was refreshed by the prohibited means was as to the exact time and duration of a given telephone conversation. They were indeed trivial incidents, although perhaps convincing as to details. Without recourse to them his testimony otherwise should be available to the government in this case.

Nelson: It has been difficult to appraise the mental processes of this witness in order to conclude whether he decided to confess, and later to plead guilty solely because of the impression made upon him by listening to one or two records of telephone conversations played to him after his first arrest in the office of the United States Attorney on May 18, 1937. However much he was shocked to learn of the existence of those talks, he stoutly refused to identify his own voice as that of a participant in either conversation. Having been released on bail that afternoon he went to the Weiss office for advice at his first opportunity and there re-

counted what had taken place at the office of the United States Attorney. Then he and Gross sought to arrange, if possible, for the release of Messman on bail for fear he would confess and implicate all concerned. On the afternoon of May 20th he observed that Inspector Shea was in Messman's private office, apparently in conference with Mrs. Messman and he suspected that the dreaded confession was then in the making. That misgiving was confirmed when Nelson was again arrested on the evening of that day and eventually was placed in a cell in detention headquarters with Messman and Chalfin, another accomplice. They urged him to confess, and Messman explained that he had made a complete disclosure implicating Nelson and others, specifically revealing the false medication prescribed by him and taken by Nelson in order that he might simulate a heart condition as the basis for fraudulent insurance claims. These conversations continued throughout the night and Nelson confessed the next day without hearing any further reproduction of telephone conversations. That the records he heard on the 18th impressed him with the completeness of the government's case is too clear for question. That impression, however, did not impel him to confess on that date. He stated at this hearing that he had been advised by an independent attorney to plead guilty prior to his second arrest, and that he had decided in his own mind that he would do this sometime during the afternoon of May 20th. However, he did not take any step compatible with that conclusion until after he had listened to the persuasions of Messman and Chalfin, to which reference has been made. Without attempting to assign a mathematical value to each of those factors in order to compare their respective contributions to the final result, it appears that, without the influence brought to bear by Messman and Chalfin, it is fair to assume that Nelson would have continued in the independent course that he laid down for himself in the office of the United States Attorney following his arrest. If Messman's persuasions had proceeded solely from what he himself had been induced to disclose as the result of telephone interceptions, it might be urged, with plausibility, that Nelson responded only to the secondary impact of what had first been directed at Messman. But a measured consideration of what the latter

revealed as a witness in this hearing dispels any such illusion.

Nelson's testimony concerning his part in the accomplishment of the matters alleged in this indictment, so long as it avoids all corroborating elements residing in the intercepted communications, should be available to the prosecution of this cause.

In conclusion, it is probably unnecessary to add what is stated for completeness, namely, that the testimony of all witnesses is to be developed with the utmost circumspection, having in mind the decisions referred to at the outset of this discussion.