STATE OF HAWAII *v.* ROBERT JOSEPH EVANS.

No. 4219.

JUNE 1, 1962.

TSUKIYAMA, C. J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

After jury trial, defendant-appellant was convicted of burglary first degree. The charge was that defendant "on the 13th day of January, 1960, during the nighttime, feloniously did enter the store of Isabel M. Rosenberg, doing business as Mai Fai Jewels, with intent to commit larceny therein * * *." On this appeal from the convic-

tion the following contentions have been argued:

1. That a jade and diamond ring, subsequently identified as one of the articles taken from Mai Fai Jewels during the burglary, was located in and taken from defendant's home by an unlawful search and seizure.

2. That defendant's confession (a) was "unlawfully obtained, while the appellant was in custody of the police and without his being promptly taken before a magistrate," and (b) was tainted by the unlawful search and seizure.

3. That there was a fatal variance in that Mai Fai Jewels was owned by Jacob and Isabel Rosenberg, husband and wife, and not by Isabel Rosenberg alone.

4. That the evidence was insufficient to show that the entry of the store was "during the nighttime." Other contentions are disposed of in the footnote.[1]

1. About 3:30 P.M. on March 10, 1960, while defendant was under arrest and held at the police station in connection with another burglary, two police officers, Shinn and Suganuma, went to defendant's home, knocked on the door, and when defendant's wife came to the door,

---

[1] In view of the conclusions reached in this opinion we deem it unnecessary to take up Specification of Error III, contending that a mistrial should have been ordered "on the ground that a police officer was permitted to relate in the presence of the jury statements made to him by others not in the presence of appellant." The error, if any, was invited.

A portion of Specification of Error IV, asserting that judgment of acquittal should have been ordered on the ground that defendant's arrest was unlawful, was not argued and accordingly the State in its brief deemed it waived. See *Matter of Avery*, 44 Haw. 26, 28, 352 P.2d 607, 609. In his reply brief defendant insisted that this contention was not abandoned but still did not offer any argument. In any event, the contention is without merit irrespective of the lawfulness or unlawfulness of the arrest. See *State* v. *Hassard*, 45 Haw. 221, 223, 365 P.2d 202, 204; *State* v. *Trask*, 45 Haw. 109, 110, 363 P.2d 790.

The specifications concerning the charge of the court have been examined and found to be without merit, only defendant's requested Instruction No. 11 requiring consideration. That instruction is considered when we take up the second point dealing with the confession.

identified themselves. Officer Shinn told Mrs. Evans that her husband was "in custody as a suspect in a burglary case" and that he "denied the charges."[2] After telling Mrs. Evans this, the officer asked "if it would be all right for us to check her house for any evidence that we may find." According to his testimony, "Mrs. Evans said it was all right and invited us into the house." In a bedroom, he found a woman's jade and diamond ring and other jewelry in a cuff link case in the left top drawer of a dresser after opening the cuff link case in the presence of Mrs. Evans. He asked Mrs. Evans if she was the owner of this ring. The record then discloses that defense counsel objected to "any hearsay" whereupon the prosecutor instructed the witness: "Don't tell us what she said." The witness then continued: "And I asked her if she was the owner of the ring. And then I seized —I seized the cuff link case, which had other jewelry inside."

At 7:45 or 7:50 P.M. Officer Shinn turned the ring over to Suganuma, the other officer who had accompanied him to the house and had been present when it was seized. Officer Suganuma, about 7:40 P.M., had resumed questioning of the defendant. During the interrogation the ring was shown to defendant. The exact point in the interrogation at which it was shown to him does not appear.

During this interrogation defendant confessed to having burglarized Mai Fai Jewels. According to Officer Suganuma's resume of defendant's oral statement, de-

---

[2]Actually, defendant had said he was not going to make any statement until he could consult an attorney. Though permitted to use the telephone on arrival at the police station to call an attorney, he had said that he didn't know any. He had been told that he might call his wife but had not sought to do so. He had wanted to speak to his father-in-law but had not been permitted to telephone the latter. Cf., R.L.H. 1955, § 255-9. We consider these circumstances in connection with the admissibility of defendant's confession.

fendant said that after entering the place he "picked a few pieces of jewelries, and amongst these was a jade ring with a lot of small diamond-like chips around it, mounted on a white gold band * * * and that he had been keeping all of the jewelries he had taken from Mai Fai inside of his cuff link case, which he kept in the left top drawer of his dresser in his bedroom."

At 8:00 P.M. a police reporter was called in, and defendant's statement was taken in shorthand and subsequently transcribed. Defendant, though agreeing the transcript was accurate, refused to sign it stating as the reason that he had not as yet contacted any attorney. During the course of this further interrogation defendant said that of the pieces taken he only recalled the ring which he then described. Shown the jade and diamond ring seized at his home, he identified it. As to the other items taken that night he said "They would be with the jade ring where you found that." This, he again said, was "In my dresser drawer in a cuff link box."

At 10:00 P.M. the two investigating officers drove defendant to Mai Fai Jewels for a demonstration as to how he had effected entry, which he gave. He also, when asked, pointed out the place in the store where he had found the jade and diamond ring. At the trial an employee of the store identified the ring as similar to one that she noted as missing when she opened the store for business the morning after the burglary and discovered the burglary.

The testimony as to the finding of the ring, the ring itself, and defendant's confession constitute the entire evidence of defendant's guilt of this particular burglary. Objection was taken to "any testimony that grows out of the presence of [the police officers] in that house." It was contended that "they can't use evidence that they acquired by permission obtained in that way from a

third person against the Defendant." Even if the third person identified herself as defendant's wife "that wouldn't make legal any evidence that they obtained for use against this Defendant," it was further contended. Defendant was allowed "an objection and exception to the entire line."

At this time we will consider the testimony as to the finding and seizure of the ring, as well as the admissibility in evidence of the ring itself. The constitutional protection against an illegal search and seizure extends to the oral testimony concerning the search and seizure, and not alone to the use in evidence of the object seized. *McGinnis* v. *United States,* 227 F.2d 598 (1st Cir.); *State* v. *Hunt,* 280 S.W.2d 37 (Mo.); *Dalton* v. *State,* 230 Ind. 626, 105 N.E.2d 509.

The State contends that defendant lacks standing to invoke the constitutional protection because he made no claim of ownership. However, articles had been seized in defendant's home for use as evidence against him. He could invoke the protection of the search and seizure clause (Article I, section 5, of the State Constitution) on the ground of possession of the premises where the seizure was made. No assertion of ownership of the property seized was necessary to confer standing. *Jones* v. *United States,* 362 U.S. 257, 265; Annot., 96 L. Ed. 66, 71, 4 L. Ed. 2d 1999, 2005. It is to be noted that, with respect to the authority of Mrs. Evans to consent to the search and seizure, a different question is presented, and as set out below we are of the view that ownership of the property seized does have bearing in that connection.

The State further contends that the search and seizure question is taken out of the case by reason of failure of defendant to make a pre-trial motion to suppress evidence unlawfully obtained. As in *State* v. *Pokini,* 45 Haw.

295, 367 P.2d 499, this case is governed not by the Hawaii Rules of Criminal Procedure but by the prior case law. True, the trial in this case was held commencing July 20, 1960 and those rules apply "so far as just and practicable [to] all proceedings then [on July 1, 1960] pending." H. R. Cr. P., Rule 59. Under the circumstances of this case as it comes before us[3] we are of the view that it would not be "just and practicable" to apply H. R. Cr. P., Rule 41(e). However, on remand the Hawaii Rules of Criminal Procedure will apply.

In cases governed by the Hawaii Rules of Criminal Procedure it will be incumbent upon the trial court to enforce Rule 41(e) thereof. If a contention of unlawful search and seizure is presented without pre-trial motion, it will be for the trial court to decide whether it will entertain the matter at the trial pursuant to the last sentence of Rule 41(e) which provides that may be done (1) if opportunity for a pre-trial motion did not exist, or (2) if defendant was not aware of the grounds for the motion, or (3) in the discretion of the court.

This case not being governed by H. R. Cr. P., Rule 41(e), but by the case law outlined in *State* v. *Pokini, supra,* we have considered defendant's contention that the unlawfulness of the search and seizure was "thrust upon the attention of the court," and have concluded that the contention is well taken. The prosecution's own evidence showed that there was no search warrant and there should have been. As will be later seen, this evidence was such as to leave no reasonable possibility that, upon a pre-trial motion, other evidence would have been

---

[3]Defendant was committed for grand jury action on March 24, 1960, after preliminary examination. The indictment was presented April 14, 1960, and a plea and motion based on the composition of the grand jury disposed of adversely to defendant's contention on May 27, 1960. Defendant pleaded not guilty on June 3, 1960 and the matter was placed on the ready calendar. At the trial which commenced July 20, 1960 the trial court did not apply Rule 41(e), merely overruling the objections.

elicited showing the lawfulness of the search.

Defendant contends:

> "*First,* a wife cannot, during her husband's absence and without his authority, waive his constitutional rights, and *Second,* there is no effectual consent, where another, wife or otherwise, in charge of an owner's premises, in his absence, is impliedly coerced to allow an officer to enter and make a search."

We do not reach the second part of this argument, as our conclusions upon consideration of the wife's authority to consent to the search and seizure dispose of this matter.

This is a case of first impression in this jurisdiction. In *Territory* v. *Young,* 32 Haw. 628, 648, the court did not consider the lawfulness of the seizure of four handkerchiefs taken out of a bureau drawer by defendant's wife and thereafter taken by the officer with the consent of the wife, the only objection noted at the trial being on the ground of immateriality, irrelevancy, remoteness and vagueness.

In some cases it is reasoned that a wife has an equal right in the premises occupied by husband and wife, and her consent suffices to legalize the search and seizure by reason of this equal right. This is to be compared with the theory—followed by some of the courts but denied by others—that a wife being in charge of the premises in the absence of the husband has authority to consent to the search and seizure made. Illustrating the first line of approach is *State* v. *Cairo,* 74 R.I. 377, 385, 60 A.2d 841, 845. The search was upheld under the particular circumstances of that case, the court saying:

> "In our judgment the search complained of was not illegal, unlawful or unreasonable, since the evidence secured thereby was taken, not in that portion of the house used and occupied exclusively by the

defendant Cairo and his wife, but in the cellar thereof, which was used in common by two different families, and to which both families had free access. As a joint owner of the premises searched Mrs. Cairo was possessed of an undivided interest therein, and in her own right as an occupant could undoubtedly give permission to search the house, or at least the cellar thereof, which was used by her in common with members of a different family."

Compare the earlier Rhode Island case of *Humes* v. *Taber*, 1 R.I. 464, 473, in which the court held incorrect a charge to the jury to the effect that the law implied an authority in the wife, in the absence of the husband, to license a search of his house for stolen goods. The court said:

" * * * The law implies no such authority. Undoubtedly, the wife's authority extends to the rendering the ordinary civilities of life. If she invites a neighbor, friend, or even stranger, to enter the house in the way of hospitality, such invitation would, under ordinary circumstances, be a valid license so to do.

"But to imply an authority to the extent contended for by the defendant in the present case, would be dangerous. An artful man might impose on the wife in the absence of the husband, and thus, for malicious and unlawful purposes, obtain from her a license to search the desks and private papers of her husband.

"No case has been cited by the counsel for the defendant which gives any countenance to such a doctrine; it is unsupported by principle, and would be mischievous in its consequences."

In Illinois the cases proceed on the theory that joint occupancy of the premises by the wife with the husband enables her to give consent to a search, and in such case the evidence disclosed may be used against either. See

*People* v. *Shambly,* 4 Ill. 2d 38, 122 N.E.2d 172; *People* v. *Perroni,* 14 Ill. 2d 581, 153 N.E.2d 578; *People* v. *Speice,* 23 Ill. 2d 40, 177 N.E.2d 233; *cf.,* the earlier case of *People* v. *Lind,* 370 Ill. 131, 18 N.E.2d 189, distinguished in the later cases on the ground that in *Lind* the consent of the wife was not freely given. In Texas, likewise, it is held that either spouse may give consent to a search of the premises thus legalizing the search. *Brown* v. *State,* 235 S.W.2d 142 (Tex. Crim.); *Ellis* v. *State,* 130 Tex. Crim. 220, 93 S.W.2d 438; *Cass* v. *State,* 124 Tex. Crim. 208, 61 S.W.2d 500.

Another case that stresses the element of joint control of the premises is *Stein* v. *United States,* 166 F.2d 851 (9th Cir.). There a woman who had been living with defendant as his wife though not married to him informed upon him and invited federal agents into the house where they found a bottle of yen shee, an opium product, in a cupboard where condiments were kept. The legality of the search was upheld.

Clearly, one in joint control of the premises, at least when no objection is made by the other occupant, may admit police officers to the house, and the question of coercion aside it also is clear that no illegal search is involved as to what is in plain sight when the police officers are so admitted. See *People* v. *Howard,* 166 Cal. App. 2d 638, 334 P.2d 105. We are not prepared to say how much further the officers may proceed or whether we agree with the above-cited cases on their facts. None of them goes so far as to hold that a wife in joint occupancy of the home can permit a search of her husband's personal effects to discover jewelry hidden in a cuff link case in a bedroom bureau drawer.[4] The wife has no such right.

---

[4] *Cf., Van Wyck* v. *State,* 56 Okla. Crim. 241, 37 P.2d 321, in which defendant and her landlady shared a bedroom, and in the course of a search with the landlady's consent stolen articles were found in the

The cuff link case opened by the officers clearly was identifiable as the husband's and we do not have here the situation where, at the time of search, it does not appear whose case is being opened. *Cf., United States* v. *Rees,* 193 F. Supp. 849, 852. Nor do we have a case in which the officers justifiably supposed that the person authorizing the search had the authority that he purported to have. *Cf., People* v. *Gorg,* 45 Cal. 2d 776, 291 P.2d 469.

The circumstances in the present case do not indicate more than the usual authority of a wife. The courts are divided on the question of implied authority of a wife to consent to a search of the premises in her husband's absence. See Annot., 31 A.L.R.2d 1078, 1091. The State cites *United States* v. *Sergio,* 21 F. Supp. 553, in which it was held that the wife who, while her husband was in the attic operating an illegal distillery, invited the officer to come in and look around, "was sufficiently in charge of the house to render her invitation legally sufficient to constitute an actual consent to the search." In this case there were, on the kitchen floor, wholesale quantities of supplies for use in the distillery and it was obvious that the wife was a party to what was going on. The case is not comparable with the present one. *Cf., United States* v. *Bush,* 283 F.2d 51 (6th Cir.). However, other cases cited do support the State's position. These cases simply bear out the statement above made that the courts are divided on the question of the implied authority of the wife. See *Hook* v. *State,* 181 N.Y.S.2d 621 (Ct. Cl.), *People* v. *Dominguez,* 144 Cal. App. 2d 63, 300 P.2d 194, and cases above cited upholding the lawfulness of the search involved, while *Humes* v. *Taber, supra,* 1 R.I. 464, *Maupin* v. *State,* 38 Okla. Crim. 241, 260 Pac. 92, *Simmons* v. *State,* 94

---

bedroom. It was held that a motion to suppress the evidence was properly overruled. The facts as to the finding of the articles in the bedroom do not appear.

Okla. Crim. 18, 229 P.2d 615, 618, *Dalton v. State, supra,* 230 Ind. 626, 105 N.E.2d 509, *Manning v. Commonwealth,* 328 S.W.2d 421 (Ky.), *United States v. Rykowski,* 267 Fed. 866, 871 (D.C. Ohio S.D.), and *Cofer v. United States,* 37 F.2d 677 (5th Cir.), are to the contrary.

We are of the view that the wife's right as joint occupant of the premises is the starting point for consideration of the lawfulness of a search made with her consent, that one of the circumstances to be considered is the husband's presence or absence, that assuming for present purposes but not deciding that the wife has implied authority to permit a search in the absence of her husband, nevertheless the search and seizure here made were not within the scope of that authority. When the officers searched the husband's personal effects to discover jewelry hidden in a cuff link case in a bedroom bureau drawer they went beyond the bounds of any possible justification. As stated in *People v. Carter,* 48 Cal. 2d 737, 746, 312 P.2d 665, 670:

> "When the husband is absent from the home, it is the wife who controls the premises, the ordinary household property, the family automobile, and with her husband's tacit consent determines who shall and who shall not enter the house on business or pleasure and what property they may take away with them. Cf. People v. Dominguez, 144 Cal.App.2d 63, 65, 300 P.2d 194. When the usual amicable relations exist between husband and wife (cf. Kelley v. State, 184 Tenn. 143, 197 S.W.2d 545, 546), *and the property seized is of a kind over which the wife normally exercises as much control as the husband,* it is reasonable to conclude that she is in a position to consent to a search and seizure of property in their home. * * *" (Italics added.)

Hence, the search in this case was unlawful irrespective

of the rule to be adopted in this jurisdiction on the question of the wife's implied authority.

In contrast with *State* v. *Pokini, supra,* the circumstances of this case afford no reasonable possibility that, upon a motion to suppress, other evidence would have been elicited showing the lawfulness of the search. Neither husband nor wife testified at the trial and neither was compellable to testify as a witness for the State, nor was the wife even competent except as a witness for the defense. R.L.H. 1955, § 222-18. We fail to see what more could have been developed in the State's favor nor has the State made any suggestions in that regard, merely arguing that it "did not have an opportunity to more fully develop the manner in which the exhibit was obtained." If the coercion of the wife were the turning point the situation might be different, but on the point at issue the unreasonableness of the search is plain. The admission in evidence of the ring and the testimony as to the finding and seizure of the ring constitute reversible error.

2. As to defendant's confession,[5] a two-fold argument has been made in this court. However, the specifications of error merely assert that it was "unlawfully obtained while the appellant was in custody of the police and without his being promptly taken before a magistrate."

After preliminary hearing as to voluntariness as provided by R.L.H. 1955, § 222-26, the trial court found "that the statement given to the officer by the defendant is a voluntary statement." We sustain this ruling under the authority of *Territory* v. *Young and Nozawa,* 37 Haw. 189, *aff'd,* 163 F.2d 490; *Territory v. Aquino,* 43 Haw. 347, 368; *Crooker* v. *California,* 357 U.S. 433. The mere fact that defendant was in custody is not determinative. In

---

[5]For the purposes of this opinion, defendant's oral statement at the police station, the unsigned transcribed statement, and the demonstration at the burglarized store, all are referred to as defendant's confession.

*Territory* v. *Young and Nozawa,* this court stated at page 197:

> "* * * A confession otherwise shown to have been voluntary is not rendered inadmissible by the fact that its author was under arrest or in custody at the time, even though the arrest or custody may have been under invalid process or without any process or legal right."

Defendant cites H. R. Cr. P., Rule 5(a)(2), relating to taking of a person arrested without a warrant before a magistrate. That rule was not in effect on March 10, 1960, the date of the confession, and its interpretation is not involved here. In any event, as stated in *Crooker:*

> "The bare fact of police 'detention and police examination in private of one in official state custody' does not render involuntary a confession by the one so detained. *Brown* v. *Allen,* 344 U.S. 443, 476 (1953). Neither does * * * the failure of state authorities to comply with local statutes requiring that an accused promptly be brought before a magistrate. *Fikes* v. *Alabama,* 352 U.S. 191 (1957)." 357 U.S. at 437.

So in *Territory* v. *Aquino,* this court held:

> "* * * We deem it unnecessary to rule whether defendant's detention was, under the facts appearing from the record, contrary to the so-called '48-hour law' (now section 255-9, R. L. H. 1955), as there has been no showing whatsoever that defendant was by his detention coerced into making any of the statements and admissions testified to as having been made by him, or that his detention in any way affected the voluntariness of the statements and admissions made by the defendant." 43 Haw. at 376.

After consideration of the time defendant had been in custody—five and a half hours, a much shorter period than was involved in the cited cases—and the circumstances

of the custody, reviewed in note 2, it still remains true, as in *Crooker*, that: "On this record we are unable to say that petitioner's confession was anything other than voluntary." 357 U.S. at 438. See also *State* v. *Foster*, 44 Haw. 403, 354 P.2d 960; *cf.*, *Culombe* v. *Connecticut*, 367 U.S. 568.

The ultimate determination of the voluntary character of a confession is for the jury. *Territory* v. *Young and Nozawa, supra.* Defendant specifies as error refusal of his requested Instruction No. 11, reading:

"The law cannot measure the force of the influence used, or decide upon its effect upon the mind of a prisoner, and therefore excludes the declaration if any degree of influence has been exerted."

This requested instruction was taken from *Territory* v. *Matsumoto*, 16 Haw. 267, 271, at which point of the opinion the court was condemning the action of one Doyle in laying hands on a prisoner during interrogation. The holding in the case was that this misconduct did not have any influence in causing the defendant to confess two days later. No instruction to the jury was under review. This illustrates the point made in *Territory* v. *Cutad*, 37 Haw. 182, 186, where the court quoted from *Garfield* v. *State*, 74 Ind. 60, 63:

"* * * It is not every statement of the law found in a text-book or opinion of a judge, however well and accurately put, which can properly be embodied in an instruction. * * *"

We are of the view that defendant's requested instruction was not properly worded and defendant was not entitled to it. *State* v. *Hassard*, 45 Haw. 221, 230, 365 P.2d 202, 207; *State* v. *Yoshida*, 45 Haw. 50, 65, 361 P.2d 1032, 1040.

We turn now to the contention that the entire confession was tainted by the unlawful search and seizure. This

contention was made for the first time when new counsel was associated in the case and filed a supplementary brief in this court. However, recognizing the relationship between this contention and the contention of involuntariness, and recognizing also the problem that will arise upon remand of the case, we have considered the point, but are of the view that in this instance the paucity of the record precludes a determination.

Had a motion to suppress been made that would have afforded opportunity to determine whether the confession was "a fruit of the poisonous tree" within the doctrine of *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385. See *Nardone* v. *United States,* 308 U.S. 338, 342. The questions involved in the contention under *Silverthorne* are illustrated by *Territory* v. *Warren,* 35 Haw. 232, 240, *aff'd,* 119 F.2d 936, 938, and by a line of cases commencing with the remand for further proceedings made in *Weiss* v. *United States,* 308 U.S. 321, following which the trial court wrestled with the problem in *United States* v. *Weiss,* 34 F. Supp. 99. Weiss having pleaded guilty, the Government proceeded on another indictment and the trial court's rulings as to the extent of the taint were sustained in *United States* v. *Goldstein,* 120 F.2d 485 (2d Cir.), but in *Goldstein* v. *United States,* 316 U.S. 114, the Supreme Court affirmed on another ground, *i.e.,* lack of standing.[6]

That defendant has a right to have excluded from evidence the portion of his confession in which he identified the ring shown him during interrogation does not

---

[6]We note that in *Milbourn* v. *State,* 212 Ind. 161, 8 N.E.2d 985, and *Quan* v. *State,* 185 Miss. 513, 188 So. 568, the confessions were held admissible. Aside from our doubts as to whether the cases were well considered—it not appearing what the unlawful search revealed in either case—only the question of voluntariness of defendant's out-of-court statements was reviewed in those cases and they are not in point in this jurisdiction in which an unlawful search and seizure may have more bearing on the admissibility of a confession than on the question of voluntariness alone.

admit of doubt. Otherwise there would be placed before the jury indirectly that which defendant is entitled to have excluded from their consideration. As to whether defendant is entitled to have the whole confession excluded, the question is one that we cannot judge on this record, and our reversal of the conviction is based on other grounds.

3. On the question of variance, defendant relies on *Territory* v. *Ferguson,* 23 Haw. 714, 717. The case is inapplicable for the reasons stated in *State* v. *Pokini,* 45 Haw. 295, 304-06, 367 P.2d 499, 504-05. Isabel Rosenberg was in charge of the Mai Fai jewelry store. There was no variance. *Cf., Wilson* v. *State,* 103 Tex. Crim. 403, 281 S.W. 844.

Revised Laws of Hawaii 1955, § 258-21, cited by defendant, does not purport to and does not set out the *only* sufficient method of stating ownership of partnership property. It merely provides that the method there set out is a sufficient method. Use of the statutory method undoubtedly would have avoided the question posed by this case, which is: Was it necessary for the indictment to state that the ownership was in a partnership? If it was, the indictment failed to so state.

Revised Laws of Hawaii 1955, § 258-10, provides that: "No indictment shall be held invalid or insufficient for want of the averment of any matter unnecessary to be proved * * *." This section further provides: "No indictment shall be deemed insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect or imperfection in matter or form, which shall not prejudice or tend to prejudice the defendant." In this case it was not necessary to aver or prove that the ownership was in a partnership. That was immaterial. Use of the name of Isabel Rosenberg, who was in charge of the store, was not misleading as to any legal

essential of the case. Defendant is protected against another prosecution for the same offense. We find no error. See *Berger* v. *United States,* 295 U.S. 78, 82; *Territory* v. *Coe,* 37 Haw. 601; *cf., Territory* v. *Tamashiro,* 37 Haw. 552.

4. As to the entry "during the nighttime" the evidence was that defendant was employed as a security officer at a shopping center where were located Mai Fai Jewels and many other stores. According to his own statements to the police, on an occasion prior to the burglary charged he had discovered that the front sliding glass door of the Mai Fai store could be pushed and shoved in such a way as to disengage the lock and afford entry. He told the police that on the night of January 13, 1960 he entered the store and took the jade and diamond ring above-mentioned shortly before 9:00 P.M.

Proof that the offense was committed in the nighttime was essential to the conviction of first degree burglary, but the time of the commission of the offense was not an essential element of the corpus delicti. *State* v. *Hale,* 45 Haw. 269, 367 P.2d 81. Therefore, defendant's own out-of-court statement that the offense was committed at night was sufficient proof of that matter without independent evidence if defendant's statement was admissible. The admissibility of the confession is the turning point.

Reversed and remanded for further proceedings.

*Edward Berman* (*O. P. Soares* with him on the briefs) for defendant-appellant.

*Kenneth K. Saruwatari,* Deputy Prosecuting Attorney, City and County of Honolulu (*John H. Peters,* Prosecuting Attorney with him on the briefs) for the State, appellee.