OPINION OF THE COURT
 

 Levine, J.
 

 Defendant was convicted following a jury trial of murder, second degree, manslaughter, first degree, and attempted robbery, first degree, arising out of his fatal shooting of a taxi driver during a bungled holdup in the Hunt’s Point area of the Bronx. This appeal concerns the validity of the seizure of the murder weapon, a 12-gouge shotgun, during the investigating detectives’ search of an apartment on Manida Street in the Bronx occupied by Sean DeJesus, defendant’s accomplice, and other members of the DeJesus family. Defendant and Sean DeJesus had been identified by eyewitnesses as the perpetrators, and defendant was already in custody when the police came to the DeJesus apartment looking for Sean.
 

 
 *292
 
 Two of the officers who conducted the search of the DeJesus apartment, Detectives Spivey and Martino, testified at the suppression hearing. They stated that they were greeted at the door by a young woman who identified herself as Kim DeJesus, Sean’s sister. She and her young daughter were the only persons at home. The detectives informed her that they were looking for Sean in connection with a shooting. Kim told them that defendant also stayed at the apartment, sleeping in Sean’s bedroom "on and off” for a week at a time. One of the detectives asked her whether she had seen either defendant or Sean with a gun. She replied that one day Sean had shown her daughter a shotgun, and she "got upset” and had an argument with Sean about it. She told the police that "she thought he had gotten rid of [the gun]”.
 

 The police then asked Kim if they could "look in Sean’s room”, and she agreed. She led them to a bedroom and pointed out which bed was defendant’s and which was Sean’s. One of the officers patted defendant’s bed and then lifted up the mattress. Under the mattress he discovered a blue canvass duffel bag, which was zipped closed. He unzipped it and found a shotgun, two shotgun shells and personal clothing. The detectives terminated the search and removed the bag and its contents. The next day they had Kim DeJesus sign a letter confirming that she had given the police permission to enter the apartment. At the suppression hearing, the prosecution stipulated that defendant had standing to challenge the entry of the police into the apartment and the ensuing search and seizure.
 

 Supreme Court denied defendant’s motion to suppress. The court concluded that the seizure of the shotgun and other items was valid because Kim DeJesus "had apparent authority to grant permission to the officers to enter and search the apartment[,] * * * consent was properly obtained as a result of the apparent authority of Ms. DeJesus [and] the search was properly conducted pursuant thereto”. The shotgun and other evidence seized were introduced at defendant’s trial. The Appellate Division affirmed (210 AD2d 83), agreeing with Supreme Court that the police "properly relied on defendant’s accomplice’s sister’s apparent authority to consent to the search of the apartment * * * which resulted in recovery of the gun”. Defendant appeals pursuant to leave granted by an Associate Judge of this Court, and we now reverse.
 

 In stipulating to defendant’s standing, the People conceded that, at the time of the police seizure, defendant had a legiti
 
 *293
 
 mate expectation of privacy, cognizable under the Fourth Amendment, in the contents of the duffel bag ("a large cylindrical fabric bag for personal belongings” [Webster’s Ninth New Collegiate Dictionary 387 (1990)]). The record is devoid of any evidence that Kim Dejesus’s specific consent was sought or obtained for the search of defendant’s duffel bag.
 

 The courts below érred in relying upon the apparent (if not actual) authority of Kim DeJesus to consent to the search of the apartment, which she jointly occupied, as furnishing apparent authority for a search of a closed and concealed receptacle owned by defendant which, by definition and common understanding, is ordinarily used for storing or transporting the personal effects of its owner.
 

 Analysis begins with the holding of
 
 United States v Matlock
 
 (415 US 164), that law enforcement officials can establish a constitutionally valid search and seizure by "show[ing] that permission to search was obtained from a third party who possessed
 
 common authority
 
 over or other sufficient relationship to the premises
 
 or effects
 
 sought to be inspected”
 
 (id.,
 
 at 171 [emphasis supplied]). The Court construed "common authority” not in any narrow property law sense, but "rather on
 
 mutual use
 
 of the property by persons generally having
 
 joint access or control for most purposes,
 
 so that it is reasonable to recognize that any of [such persons] has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched”
 
 (id.,
 
 at 171, n 7 [emphasis supplied]).
 

 In subsequent applications of the
 
 Matlock
 
 standard for effective third-party consent to search, the courts have paid heed to
 
 Matlock’s
 
 reference in the disjunctive to the requisite common authority of the other, consenting person "over * * * the premises
 
 or
 
 effects sought to be inspected”, particularly when the target of the search was a closed container owned by a guest, located on the premises of the host who consented to the search. Thus, Justice O’Connor, concurring (with then-Justice Rehnquist) in
 
 United States v Karo
 
 (468 US 705, 725), admonished that, because the
 
 Matlock
 
 test focuses on the common authority over and mutual use or access and control of the particular place or thing intended to be searched, "[a] homeowner’s consent to a search of the home may not be effective consent to a search of a closed object inside the home”.
 

 The foregoing distinction has been particularly recognized and honored when the guest’s closed container (or similar item)
 
 *294
 
 is an article customarily used to hold one’s most personal belongings. As one Federal court put it:
 

 "Common experience of life, clearly a factor in assessing the existence and the reasonableness of privacy expectations, surely teaches all of us that the law’s 'enclosed spaces’ — mankind’s valises, suitcases, footlockers, strong boxes, etc. — are frequently the objects of [one’s] highest privacy expectations, and that the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in public places or in places under the general control of another. Indeed, to the sojourner in our midst— all of us at one time or another — the suitcase or trunk may well constitute practically the sole repository of such expectations of privacy as are had”
 
 (United States v Block,
 
 590 F2d 535, 541 [4th Cir];
 
 see also,
 
 3 LaFave, Search and Seizure § 8.5 [d], at 798 [3d ed]).
 

 Overwhelmingly, the courts have thus rejected the sufficiency of a host’s general consent to search premises to validate the search of a guest’s overnight bag, purse, dresser drawers used exclusively for the guest’s personal effects, or similar objects.
 
 [1]
 

 It therefore follows that, in the absence of any proof whatsoever that Kim DeJesus shared "common authority” over defendant’s duffel bag, based upon mutual use or joint access and control
 
 (United States v Matlock, supra),
 
 the People failed to establish her actual authority to consent to the seizure of the duffel bag and its contents, as a matter of law. The evidence also failed to establish her apparent authority to consent to that seizure. Before the Supreme Court spoke definitively on the issue, we held in
 
 People v Adams
 
 (53 NY2d 1, 9,
 
 rearg denied
 
 
 *295
 
 54 NY2d 832,
 
 cert denied
 
 454 US 854), that "where the searching officers rely in good faith on the apparent capability of an individual to consent to a search and the circumstances reasonably indicate that that individual does, in fact, have the authority to consent, evidence obtained as the result of such a search should not be suppressed”. Then, in
 
 Illinois v Rodriguez
 
 (497 US 177, 179) the Supreme Court similarly held valid a warrantless seizure "upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who
 
 in fact
 
 does not do so” (emphasis supplied). In
 
 Rodriguez,
 
 the Supreme Court applied to third-party consent searches the general principle that "in order to satisfy the 'reasonableness’ requirement of the Fourth Amendment, what is generally demanded of the many
 
 factual determinations
 
 that must regularly be made by agents of the government * * * is not that they always be correct, but that they always be reasonable”
 
 (id.,
 
 at 185 [emphasis supplied]).
 

 The burden of establishing either actual or apparent authority "rests upon the State”
 
 (id.,
 
 at 181). The People’s burden here was, thus, to prove by a preponderance of the evidence that the
 
 "facts
 
 available to [Detectives Spivey and Martino] at the moment * * * warrant a man of reasonable caution in the belief that the consenting party had authority over [defendant’s duffel bag]. If not, then warrantless entry
 
 without further inquiry
 
 is unlawful unless authority actually exists”
 
 (id.,
 
 at 188-189 [emphasis supplied] [internal quotations and citation omitted]).
 

 As these excerpts from
 
 Illinois v Rodriguez
 
 demonstrate, the apparent authority of a third party to consent to a search of a suspect’s personal effects must rest upon the police officer’s reasonably held
 
 factual
 
 interpretation of the circumstances; it cannot be based on a mistaken view of the law. This has been the consistent reading of
 
 Rodriguez
 
 by the Federal courts. As stated in
 
 United States v Welch
 
 (4 F3d 761), "the [apparent authority] doctrine is applicable only if the facts believed by the officers to be true would justify the search as a matter of law. * * * A mistaken belief as to the law, no matter how reasonable, is not sufficient”
 
 (id.,
 
 at 764-765 [citations omitted];
 
 see also, United States v Brown,
 
 961 F2d 1039, 1041,
 
 supra; United States v Salinas-Cano,
 
 959 F2d 861, 865-866,
 
 supra; United States v Whitfield,
 
 939 F2d 1071, 1073-1074,
 
 supra).
 

 The People have failed to sustain their burden here. There are simply no factual circumstances on this record that
 
 *296
 
 were presented to the detectives when Kim DeJesus consented to the search of the apartment, which would have supported a reasonable belief that she also had common authority, by way of mutual use, joint access or control, over defendant’s zipped closed duffel bag secreted under the mattress of his bed. Absent additional factual circumstances which could have led them reasonably to believe that Kim had such actual authority, their belief that she did could only have been based on her actual or apparent authority to consent to the general search of the apartment premises. But, as we have already demonstrated, this was a mistake of law, not of fact, and however reasonable, cannot validate a third-party consent to search
 
 (Illinois v Rodriguez,
 
 497 US, at 185, supra;
 
 United States v Welch,
 
 4 F3d, at 764-765,
 
 supra).
 

 The People’s attempt to base apparent authority of Kim DeJesus to consent to the search of the duffel bag on the colloquy between her and the detectives concerning some prior display of a shotgun to her daughter by Sean is also unavailing. It is true that some courts have considered as one factor favoring a third party’s actual or apparent authority to consent that the search was "conducted 'upon the initiative of the host for reasons relating to the host’s interest in the safe and secure enjoyment of his premises’ ”
 
 (United States v Salinas-Cano,
 
 959 F2d, at 864,
 
 supra
 
 [quoting 3 LaFave, Search and Seizure § 8.5 (d), at 306-307 (2d ed)]). Here, the extent of the discussion regarding the gun shows only that the subject of the gun was brought up by the police, not Kim DeJesus, and the colloquy negated rather than supported any inference that she might have requested the police to search for the gun out of apprehension for her safety or that of her child. As Detective Martino described her response to their inquiry, "she thought he had gotten rid of [it]”. Viewing the record on this issue in the light most favorable to the People, at most the situation was ambiguous concerning whether Kim was then fearful regarding the possibility that a gun remained on the premises, despite her prior protest. Faced with that ambiguity, the police were not free to proceed with a search and seizure of defendant’s duffel bag without further inquiry. "It is the government’s burden to establish that a third party had authority to consent to a search. * * * The burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry”
 
 (United States v Whitfield,
 
 939 F2d, at 1075,
 
 supra
 
 [citing
 
 Illinois v Rodriguez,
 
 497 US 177, 181, 188-189, supra]). The fact that Kim had at one time objected to Sean’s
 
 *297
 
 display of a shotgun to her daughter, which she thought he had "gotten rid of’, would not support a reasonable belief on the part of the officers that she was presently requesting them to search for the gun out of fear for personal safety; hence, "warrantless entry [into the duffel bag] without further inquiry [was] unlawful”
 
 (Illinois v Rodriguez,
 
 497 US, at 188-189,
 
 supra).
 

 Our decision in
 
 People v Adams
 
 (53 NY2d 1,
 
 supra),
 
 is not to the contrary. In
 
 Adams
 
 the search of the defendant’s apartment took place upon the specific request and consent of his girlfriend, who expressed fear that he would use the arsenal of weapons kept there to kill her. The defendant’s girlfriend in
 
 Adams
 
 had a key to his apartment and pointed out the closet where the guns were stored. Most significantly, the girlfriend’s initiative came within minutes after the defendant escaped following a gun battle with the police, and the apartment she asked the police to search for him and his weapons was in the immediate vicinity of where he had fired four shots at a police officer
 
 (id.,
 
 at 10-11). In
 
 Adams,
 
 we stressed that it was only these exigencies which excused the failure of the police to make further inquiry into the girlfriend’s authority to consent to the search of the closet in defendant’s apartment
 
 (id.).
 

 [2]
 

 For all the foregoing reasons, the duffel bag and its contents should have been suppressed. Despite the otherwise strong case submitted by the prosecution here, the erroneous introduction into evidence of the items seized pursuant to the invalid third-party consent, notably the purported murder weapon, cannot be considered to have been harmless error, i.e., "that there is no reasonable possibility that the error might have contributed to defendant’s conviction and that it was thus harmless beyond a reasonable doubt”
 
 (People v Crimmins,
 
 36 NY2d 230, 237). Hence, reversal and a new trial are mandated.
 

 Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to suppress physical evidence granted, and a new trial ordered.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . Federal cases:
 
 United States v Whitfield,
 
 939 F2d 1071 (DC Cir);
 
 United States v Johnson,
 
 22 F3d 674 (6th Cir);
 
 United States v Rodriguez,
 
 888 F2d 519 (7th Cir);
 
 Marvin v United States,
 
 732 F2d 669 (8th Cir);
 
 United States v Wilson,
 
 536 F2d 883 (9th Cir),
 
 cert denied
 
 429 US 982;
 
 United States v Salinas-Cano,
 
 959 F2d 861 (10th Cir);
 
 United States v Gilley,
 
 608 F Supp 1065 (SD Ga);
 
 United States v Poole,
 
 307 F Supp 1185 (ED La);
 
 see, United States v Brown,
 
 961 F2d 1039 (2d Cir).
 

 Representative State cases:
 
 People v Cruz,
 
 61 Cal 2d 861, 395 P2d 889;
 
 State v Edwards,
 
 214 Conn 57, 570 A2d 193;
 
 State v Melbert,
 
 649 So 2d 740 (La Ct App);
 
 Owens v State,
 
 322 Md 616, 589 A2d 59,
 
 cert denied
 
 502 US 973;
 
 State v Suazo,
 
 133 NJ 315, 627 A2d 1074;
 
 State v Johnson,
 
 85 NM 465, 513 P2d 399 (Ct App);
 
 State v Barndt,
 
 68 Ore App 755, 683 P2d 166 (Ct App);
 
 State v Zachodni,
 
 466 NW2d 624 (SD).
 

 [2]
 

 . In
 
 People v Adams,
 
 the defendant did not challenge the validity of the entry of the police into his apartment in order to arrest him.