OPINION OF THE COURT
Megan Tallmer, J.
The issue raised in this case is whether a common-law wife may consent to a search of her husband’s dresser drawers. For the following reasons, the court concludes that she may.
Defendant is charged with criminal possession of a weapon and possession of air pistols. He moves to suppress weapons and ammunition recovered from his home on the grounds that their seizure violated his Fourth Amendment rights. A hearing on defendant’s motion was held before me on June 12, 1996. Ms. Shekniqua Scipio and Police Officer Jose Bonano testified for the People. Despite minor inconsistencies, I find both witnesses to be credible and on the basis of all the evidence adduced, make the following findings of fact and conclusions of law:
In November of 1995, Ms. Scipio lived at 1035 Grand Concourse, apartment 5CS with defendant and her three children. The lease to the apartment was in Ms. Scipio’s name. Defendant was Ms. Scipio’s common-law husband; they legally were married one month after his arrest.
On November 28, 1995, Ms. Scipio telephoned the police to report that defendant had pulled a gun on her. Ms. Scipio met the police outside her building. The police asked if they could look around the apartment and Ms. Scipio responded that they were free to look anywhere they wanted.
Ms. Scipio accompanied four to five police officers upstairs to her apartment. She opened the door to the apartment at the same time as defendant opened it from the inside. The police asked defendant if he lived there and he replied, "this is my house”. After Ms. Scipio identified defendant as the person who had pulled a gun on her, defendant was handcuffed and placed in the living room. Ms. Scipio told the police the gun probably was inside a wall unit in the living room. When the police failed to find a gun there, they asked Ms. Scipio if they could look around. She responded, "go ahead, look around, I don’t care”.
In Ms. Scipio’s presence, the police searched the dining room, bathroom, and a hallway closet. The police also searched the *480 kitchen and the roof. Ms. Scipio and the police then proceeded to the bedroom she shared with defendant. Inside the bedroom was a dresser with three drawers. Ms. Scipio explained to the officers that the top and bottom drawers of the dresser were defendant’s and that the middle drawer was hers.[1] The bedroom also contained a chest with two drawers, one of which was used by defendant and the other by Ms. Scipio’s son.
Ms. Scipio informed the officers that defendant kept guns in the bedroom, possibly in the dresser. After an initial search of the bedroom failed to uncover any guns, Ms. Scipio told the police they could leave because defendant probably put the gun on the roof. When Officer Bonano opened the top drawer of the dresser, however, he discovered three guns and boxes of ammunition. Defendant then was placed under arrest.
Conclusions of Law
The People rely on Ms. Scipio’s consent to justify the warrantless search of the bedroom dresser conducted by the police.[2] It is settled law that a joint occupant who has common authority over premises may consent to a search of such premises. (People v Cosme, 48 NY2d 286 [1979].) Common authority does not rest upon the law of property or agency, but rather "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.” (United States v Matlock, 415 US 164, 171 [1974].) It thus is clear that Ms. Scipio, as the joint occupant of apartment 5CS, had the right to consent to a search of the apartment. What is less clear is whether she similarly had the authority to permit the police to search dresser drawers used by defendant and identified as such to the police.
The Court of Appeals in Cosme (supra) declined to express a view as to the outcome in cases where one individual sharing premises with others "has carved out a specific area for his *481 own exclusive use” or where consent is given by an individual "who, as a practical matter, enjoys less than unrestricted access to and control over the premises to be searched.” (People v Cosme, 48 NY2d, at 293, n 2.)
The only factually similar New York case that has considered the issue reserved in Cosme (supra) is People v Gonzalez (50 Misc 2d 508 [App Term, 2d Dept 1966]). In Gonzalez, defendant’s wife advised the police that her husband had a zip gun and bullets in a dresser drawer. Acting upon this information, the police seized evidence from the drawer. On appeal, defendant argued that a wife cannot consent to a search of her husband’s dresser drawers because a "spouse is not impliedly authorized by reason of the husband-wife relationship to waive his constitutional protection.” (Brief for defendant-appellant, at 9.) Defendant relied upon State v Evans (45 Haw 622, 372 P2d 365 [1962]), inter alia, in support of this proposition. In Evans, the Supreme Court of Hawaii held that a wife had no authority to consent to a search of her husband’s "personal effects” hidden in a cuff link case in a bedroom dresser drawer. (State v Evans, 45 Haw, at 633, 372 P2d, at 372.)
Citing State v Evans (supra), the Appellate Term in Gonzalez (supra) held that the defendant’s wife could not validly consent to a search of his personal effects not exposed to public view. The court observed that "[s]ince consent is the weakest possible basis for a search * * * it is even less persuasive when given by one’s wife to effect a waiver of his constitutional right against unreasonable search.” (People v Gonzalez, 50 Misc 2d, at 509.)
As Professor LaFave notes, it is doubtful whether the approach followed in Evans (supra) and Gonzalez (supra) is consistent with more recent Fourth Amendment jurisprudence, since it relies upon a theory of one spouse waiving the other’s constitutional rights, as opposed to the "common authority” rationale adopted by the Supreme Court in Matlock (supra). LaFave observes:
"[T]he mere fact that a certain object may be characterized as a 'personal effect’ does not compel the conclusion that no risk is assumed by leaving that object in premises also occupied by a spouse * * *
"[T]he question is not whether the object seized was a personal effect of the nonconsenting spouse, but rather whether the object was kept in a place devoted to his exclusive use.” (3 LaFave, Search and Seizure § 8.4 [a], at 761 [3d ed].)
Because Gonzalez (supra) does not represent the current state of the law, the court declines to follow its holding. Absent any *482 persuasive New York authority, Federal and State cases that have considered whether a spouse may consent to search an enclosed space used by the other spouse are instructive.
In People v Stacey (58 Ill 2d 83, 317 NE2d 24 [1974]), the court found that defendant’s wife had the right to consent to the search and seizure of a blood-stained shirt from defendant’s dresser drawer. The court reasoned: "Although the evidence shows that the bottom dresser drawer from which the shirt was taken was used by the defendant alone, the dresser was located in the bedroom mutually used by the defendant and his wife. Instead of establishing limited access to and control of the bedroom, the dresser, or the bottom drawer of the dresser, the evidence establishes a mutual use and control of the room and its equipment and the wife’s right of access to the bottom dresser drawer * * * The mere fact that defendant alone may have used this dresser drawer while his wife may have used another * * * does not indicate the wife was denied the mutual use, access to or control of the drawer.” (People v Stacey, 58 Ill 2d, at 89-90, 317 NE2d, at 27-28.)
United States v Ocampo (492 F Supp 1211 [ED NY 1980], revd in part on other grounds and affd in part 650 F2d 421 [2d Cir 1981]) is to the same effect. There, defendant’s wife was asked to show Federal agents where defendant’s papers or documents could be found and she showed them a night table and dresser in the bedroom and drawers in the kitchen. (United States v Ocampo, 492 F Supp, at 1224.) The court denied defendant’s motion to suppress a telephone book seized from the night table, rejecting his argument that he exercised exclusive control over the areas from which records were seized. The court stated: "Although Nora Otero told the officers that the records belonged to her husband, we do not infer from this that she had no authority to use the night table, dresser, and cabinets in question, all of which were located in common areas of the apartment with respect to which she had an undisputed right of access and use. On the contrary, we believe that her relationship to and common authority over the premises searched gave her sufficient authority to consent to the search.” (United States v Ocampo, 492 F Supp, at 1237, n 17.)
Similarly, State v Esparza (1990 WL 7966 [Ohio Ct App, Feb. 1, 1990, Miller, JJ) held that defendant’s wife could consent to the search of an unlocked dresser drawer in a common room of the marital residence although the drawer contained clothing belonging to defendant. In United States v Sealey (830 F2d *483 1028 [9th Cir 1987]), the Ninth Circuit determined that as part owner and occupant, defendant’s wife had mutual access to the garage notwithstanding her advice to the police that she needed her husband’s permission to go in the garage. (Supra, at 1031; see also, Frazier v Cupp, 394 US 731, 740 [1969] [rejecting as a "metaphysical sublet(y)” defendant’s argument that joint user of a duffel bag had authority to consent to search of only one compartment of the bag]; United States v Robinson, 479 F2d 300 [7th Cir 1973] [paramour may consent to search of unlocked, uncovered cardboard boxes in closet used jointly with defendant]; Bruce v State, 268 Ind 180, 236-237, 375 NE2d 1042,1072-1073 [1978] [defendant’s wife could consent to search of defendant’s jewelry box since the wife generally had joint access to all areas in her own bedroom].)
In United States v Duran (957 F2d 499 [7th Cir 1992]), defendant argued that his wife lacked authority to consent to a search of a farmhouse located on the couple’s property because the wife believed that the farmhouse was defendant’s private gym and never went into or used the structure. The court decided not to establish a per se rule that common authority extends to "every square inch” jointly occupied by a married couple. The court opined: "[T]he per se rule is defective because it presumes that spouses, in forging a marital bond, remove any and all boundaries between them * * * Some might argue that this represents the ideal in marriage, and perhaps they are right. But although marriage may be the most intimate of all human relations, this ideal does not reflect reality, either in practice or in the eyes of the law * * * Not all spouses share everything with their mates, which is another way of saying that spouses do not surrender every quantum of privacy or individuality with respect to one another.” (Supra, at 504.)
In lieu of a per se rule, the Seventh Circuit adopted a presumption that a spouse has authority to consent to all areas of the marital homestead, with the nonconsenting spouse able to rebut this presumption by showing that the consenting spouse was denied access to the area searched. (United States v Duran, supra, at 505.) Applying this presumption, the court concluded that the fact that defendant’s wife neither used the farmhouse nor left her personal effects there did not bear on whether defendant maintained exclusive dominion over the farmhouse since "[o]ne can have access to a building or room but choose not to enter.” (Supra.)
In accordance with Duran (supra), this court presumes that Ms. Scipio had authority to consent to a search of *484 defendant’s dresser drawer. Although Ms. Scipio indicated that the drawer in which the guns were found was used by defendant, the unlocked drawer was in a dresser located in defendant and Ms. Scipio’s bedroom.[3] Ms. Scipio used one of the drawers in the same dresser. Defendant did not adduce any evidence that he had exclusive control over the top drawer or that his use of two of the three dresser drawers was anything other than a practical arrangement commonly agreed to by married persons. (See, 3 LaFave, Search and Seizure § 8.4 [a], at 762 [3d ed] ["Under the Matlock assumption of risk approach, the requisite exclusive use is not established by the mere fact that only the other spouse had heretofore made it a practice to use the particular area searched; something more specific by way of a showing that the consenting spouse was denied access is required”].) Without such evidence, defendant has failed to rebut the presumption of mutual authority and the court finds that Ms. Scipio lawfully could consent to a search of defendant’s dresser drawer.
People v Gonzalez (88 NY2d 289 [1996]), relied upon by defendant, clearly is distinguishable.[4] In Gonzalez, the Court of Appeals ruled that the sister of a friend of defendant could not consent to the search of defendant’s zipped duffel bag stored under the mattress of a bed that was used by defendant when he stayed overnight in her brother’s room. Unlike the instant case, the bag was not in a room shared by defendant and the consenting party, much less by persons in a married relationship. Moreover a zipped duffel bag is akin to a suitcase or footlocker, which have been recognized as the type of containers commonly used to protect privacy. (United States v Block, 590 F2d 535, 541 [4th Cir 1978].)
In sum, the court finds that Ms. Scipio’s consent to the police search of her apartment, including the dresser in her bedroom, was voluntary and that Ms. Scipio had actual authority to consent to such search. The court accordingly denies *485 defendant’s motion to suppress the guns and ammunition found in the dresser drawer.[5]

. Although Officer Bonano testified Ms. Scipio told him the entire dresser was defendant’s, I credit Ms. Scipio’s testimony that she advised the police that the middle drawer was used by her.

. On oral argument following the hearing, the People asserted as an alternative theory that exigent circumstances provided an exception to the warrant requirement. The People did not argue this ground in their written submission and the court therefore deems it abandoned.

. For purposes of the Duran analysis, it is immaterial that Ms. Scipio and defendant were not married legally until one month after defendant’s arrest. (See, United States v Duran, 957 F2d, at 504, supra.)

. None of the Federal or State cases cited by the Court of Appeals in support of its holding (People v Gonzalez, supra, 88 NY2d, at 294, n 1) concerns a wife’s consent to search of a dresser used jointly with her husband. The case closest to the facts of this case is State v Zachodni (466 NW2d 624 [SD 1991]). There, the court noted in dicta that a husband lacks common authority or joint control over his wife’s purse. (Supra, at 628.) A purse, however, is far more comparable to a suitcase or briefcase than to a drawer in a dresser shared by a wife and husband.

. The court rejects defendant’s argument that Ms. Scipio’s statement to the police that they could leave the apartment constituted a revocation of her previous consent to search. Placed in context, it is clear that Ms. Scipio’s comment did not serve to withdraw her consent but merely indicated that a further search might be fruitless. The court further finds that defendant’s Dunaway argument lacks merit. The police had probable cause to arrest defendant once Ms. Scipio identified him as the person who pulled a gun on her. In any event, the weapons and ammunition were not recovered incident to defendant’s detention or arrest, but rather as a product of Ms. Scipio’s consent to search.