■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WALID NEHMA, Appellant. [954 NYS2d 706]—

Mercure, J.P.

Initially, we reject defendant's argument that the verdict is against the weight of the evidence. Inasmuch as an acquittal would not have been unreasonable, we "must weigh [the] conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such

---

**3.** Notably, defendant has failed to articulate any present legal or practical distinction between the two.

conclusions" in light of the elements of the crime (*People v Danielson*, 9 NY3d 342, 348 [2007]; *see People v Romero*, 7 NY3d 633, 643-644 [2006]). In our view, the evidence adduced at trial demonstrated that defendant intended and came dangerously close to engaging in forcible sexual intercourse with the victim, thereby establishing the elements of attempted rape in the first degree (*see* Penal Law §§ 110.00, 130.35 [1]). Defendant argues that the victim mistakenly identified him and that her testimony was incredible, given her history of mental illness, her intoxication and failure to take her medication on the day of the incident, and her admission that she had consensual sex with another man at the scene of the incident on the night in question but lied about it to police. These matters, however, were fully explored at trial and the victim's testimony was not inherently incredible. Indeed, her testimony that defendant knocked her to the ground and tried to force her to have intercourse with him while she punched and scratched him was corroborated by the presence of defendant's DNA on her neck and under her fingernails and the nature of her injuries observed by nurses and police at the hospital. According the jury deference in its resolution of credibility issues, we conclude that the verdict was not against the weight of the evidence (*see People v Blackman*, 90 AD3d 1304, 1306-1308 [2011], *lv denied* 19 NY3d 971 [2012]; *People v Newkirk*, 75 AD3d 853, 858-859 [2010], *lv denied* 16 NY3d 834 [2011]; *People v Jackson*, 48 AD3d 891, 892 [2008], *lv denied* 10 NY3d 841 [2008]).

We agree with defendant, however, that the statements that he made at the police station should have been suppressed. The testimony at the suppression hearing revealed that Police Officer Brandon Bailey was on patrol in Albany around 11:00 p.m., several weeks after the incident, when he learned that defendant—who police had observed on video surveillance from the night of the incident—was using the restroom inside a nearby bar. When defendant exited the bar, Bailey and his partner asked if they could speak to him and pat him down for weapons. Defendant, who began studying English when he arrived in the United States eight months earlier and spoke only broken English, replied "okay" to these requests. Nevertheless, when Bailey began to pat him down, defendant was "agitated" and "irate," began "flailing his arms" and tried "to turn around." The officers placed defendant in handcuffs and into the backseat of a patrol vehicle. Bailey conceded that he found nothing during the pat down, but defendant was in custody at that point and *Miranda* warnings were not given.

While they were in the car, Bailey's partner asked if defend-

ant "want[ed] to come down and speak to detectives about an incident not involving tonight." Although defendant agreed, he continuously asked, "What is the problem? I am no problem," and repeatedly insisted, "I just went to use the bathroom. I am no problem here." In response to a further question, defendant also stated that he had never been to bars in downtown Albany before.

Bailey testified that the handcuffs were removed once they got to the station because the officers believed that defendant was calmer and "acting more civilized." Bailey then brought defendant to the interview room and remained seated outside for the entire time that defendant was there. Detective James Olsen, who was investigating the attempted rape, arrived at approximately 12:45 a.m. to interview defendant. Olsen advised defendant of his *Miranda* rights, but neglected to inform defendant of the right to have an attorney present during questioning. In response to questioning by Olsen, defendant denied ever being at bars in downtown Albany or that he owned a black jacket with white fur on the hood.*

Based upon Bailey's admission that defendant was in custody while in the patrol car but no *Miranda* warnings were given prior to questioning, County Court determined that defendant's statement that he had never been to downtown Albany before, which was made while in the vehicle, must be suppressed (*see generally People v Baptiste*, 306 AD2d 562, 566 [2003], *lv denied* 1 NY3d 594 [2004]). The court then properly concluded that the *Miranda* warnings administered by Olsen at the station were insufficient (*see People v Hutchinson*, 59 NY2d 923, 924-925 [1983]). Nevertheless, the court ruled that there was a pronounced break between the custodial situation in the vehicle and the later questioning at the station, such that "attenuation principles" dictated that defendant was not in custody at the station, and that *Miranda* warnings were therefore not required. We disagree.

Attenuation in this context refers to " 'such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning' " (*People v White*, 10

---

* These statements were relevant to defendant's identity and, arguably, his consciousness of guilt, inasmuch as defendant had been observed taking pictures of women in area bars on the night of the incident, and later following the victim and her male companion. In addition, the victim had described him as wearing a black jacket with white fur on the hood. A search of defendant's apartment revealed a jacket matching the victim's description and photos of women dancing on a dance floor.

NY3d 286, 291 [2008], *cert denied* 555 US 897 [2008], quoting *People v Chapple*, 38 NY2d 112, 115 [1975]), thereby "dissipat-[ing] the taint from [a] *Miranda* violation" such that a subsequent "Mirandized statement is admissible at trial despite [a] prior, unwarned statement" (*People v Paulman*, 5 NY3d 122, 131 [2005]). That inquiry is irrelevant here because *Miranda* warnings were never properly given, and there is no "subsequent Mirandized statement" to be considered. In contrast, "[t]he standard for assessing a suspect's custodial status"—the correct inquiry here—"is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (*id.* at 129). The relevant circumstances present here include defendant's limited fluency with the English language, his evident confusion over and resistance to Bailey's attempt to pat him down, his repeated questioning of why the officers had detained him for using the bathroom in a bar, the admission that defendant was in custody while in the patrol vehicle, the officers' use of handcuffs on him until they felt he was beginning to act "more civilized," the continuing presence of Bailey—who had earlier handcuffed defendant for resisting the pat down—outside the interview room, Olsen's evident belief that *Miranda* warnings were, in fact, required, and the similarity of Olsen's questions to those asked while defendant was admittedly in custody. Under these circumstances, a reasonable person would not have felt free to leave and, thus, defendant's statements at the station—denying that he had been to bars in downtown Albany or that he owned a black jacket with white fur—were the product of custodial interrogation and should have been suppressed (*see People v Baggett*, 57 AD3d 1093, 1094-1095 [2008]; *People v Burry*, 52 AD3d 856, 859 [2008], *lv dismissed* 10 NY3d 956 [2008]). Inasmuch as it cannot be said that the improper admission of these statements was harmless beyond a reasonable doubt, reversal is required (*see People v Van Patten*, 48 AD3d 30, 35-36 [2007], *lv denied* 10 NY3d 845 [2008]).

With the exception of his challenge to Supreme Court's *Molineux* ruling, defendant's remaining arguments are rendered academic by our decision. His *Molineux* challenge lacks merit; the admitted evidence was relevant to defendant's motive and intent, provided necessary background, and was more probative than prejudicial (*see People v Dorm*, 12 NY3d 16, 19 [2009]; *People v Tarver*, 2 AD3d 968, 969 [2003]).

Lahtinen, Kavanagh, McCarthy and Garry, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.