People v Butkiewicz (2019 NY Slip Op 06118)





People v Butkiewicz


2019 NY Slip Op 06118


Decided on August 8, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 8, 2019

109184

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
MICHAEL J. BUTKIEWICZ, Appellant.

Calendar Date: May 30, 2019

Before: Clark, J.P., Mulvey, Devine, Aarons and Rumsey, JJ.


Rural Law Center of New York, Castleton (Kristin A. Bluvas of counsel), for appellant.
Jason M. Carusone, District Attorney, Lake George (Benjamin R. Smith of counsel), for respondent.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from a judgment of the County Court of Warren County (Hall Jr., J.), rendered August 1, 2016, upon a verdict convicting defendant of the crimes of attempted rape in the first degree, sexual abuse in the first degree, assault in the second degree, strangulation in the second degree and unlawful imprisonment in the second degree.
In a five-count indictment, defendant was charged with attempted rape in the first degree, sexual abuse in the first degree, assault in the second degree, strangulation in the second degree and unlawful imprisonment in the second degree. Following a suppression hearing and a jury trial, defendant was convicted as charged and sentenced to consecutive prison terms of 15 years for his conviction of attempted rape in the first degree, seven years for his conviction of sexual abuse in the first degree and seven years for his conviction of strangulation in the second degree, and to lesser concurrent prison terms on the remaining convictions [FN1]. Defendant appeals.
Defendant contends that the verdict with respect to his conviction of attempted rape in the first degree is not supported by legally sufficient evidence or, in the alternative, is against the weight of the evidence. "When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Granger, 166 AD3d 1377, 1378 [2018] [internal quotation marks and citations omitted]). In contrast, when assessing the weight of the evidence, we first consider whether a different verdict would have been unreasonable and, if not, we "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the [*2]testimony" (People v McCoy, 169 AD3d 1260, 1261-1262 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1033 [2019]). As relevant here, a conviction for attempted rape in the first degree requires proof that the defendant "intended and came dangerously close to engaging in forcible sexual intercourse" with another person (People v Nehma, 101 AD3d 1170, 1171 [2012]; see Penal Law §§ 110.00, 130.35 [1]).
Defendant argues that the evidence at trial did not establish that he was dangerously close to committing rape in the first degree. We disagree. The victim testified that, at approximately 7:30 p.m. on October 21, 2015, she was at her house when she heard the doorbell ring and, upon taking her dog by his collar, she opened the door "a little bit." The victim stated that defendant — whom she did not immediately recognize — informed her that he was "Mike from across the street" and had locked himself out of his house. He told the victim that his cell phone was running out of battery, that his wife was at work and that he was wondering whether he could borrow a phone charger. She indicated that, once defendant was inside of her house, she noticed that he appeared "fidgety" and "unsettled," had "bloodshot" eyes and smelled of alcohol. The victim stated that, after learning that her phone charger was not compatible with his cell phone, defendant asked whether he could use the victim's phone; when defendant attempted to call his wife, the cell phone inside of his pocket rang. According to the victim, defendant looked "surprised" and "flustered" and asked the victim to dial his wife's phone number for him. After dialing a phone number dictated by defendant, she handed him her cell phone and, when his phone calls went to voicemail, she sent a text message to defendant's wife to explain the situation.
The victim stated that, while they were waiting to hear from defendant's wife, defendant asked her for a card to "slip the lock" of his house. According to the victim, defendant represented that he did not know what he was doing and requested that she assist him. Although the victim thought it was "very strange" that defendant needed assistance, she agreed to help him. The victim explained that, when she and defendant arrived at his front door, he "immediately" placed his left hand on the doorknob. The victim further explained that, as she tried to "jimmy the lock with the card," she was unsure as to whether it would work because she did not have the doorknob to turn. She testified that, when she saw the door open "a tiny bit," she "immediately" felt defendant's hand on the back of her neck. The victim stated that defendant — who, by her estimation, is about one foot taller and 100 pounds heavier than she — grabbed her and pushed her inside, causing her to land on her hands and knees. The victim recalled seeing "[b]ig, thick pieces of glass" all over the floor and thinking that "something really bad happened in this house already." The victim pleaded with defendant to let her go and, in response, he punched her in the face. As the victim screamed and continued to plead with defendant, defendant choked her, grabbed her around the waist and dragged her to a doorway between two rooms. According to the victim, defendant then said that he was "going to cum inside of [her]" and, in response to another scream, either punched or choked her.
The victim recalled trying to keep her legs together and defendant ripping open her shirt and bra, pulling up her skirt and tearing off her tights. She further recalled that defendant forced her legs open, pulled her underwear to the side and forced his fingers inside of her vagina. The victim testified that, while defendant appeared to be stroking himself, she continued to plead with him until she realized that he had released her from his grip. The victim further testified that, after directing her to sit on the couch so that he could "think," defendant permitted her to leave his house. Defendant, who testified on his own behalf, gave a different version of the events and maintained that any sexual contact with the victim was consensual. The foregoing — viewed in the light most favorable to the People — presented a valid line of reasoning and permissible inferences from which a rational juror could conclude that defendant intended to commit rape and came dangerously close to doing so (see Penal Law §§ 110.00, 130.35 [1]; People v Clyde, 18 NY3d 145, 155 [2011], cert denied 566 US 944 [2012]; People v Lamagna, 30 AD3d 1052, 1053 [2006], lv denied 7 NY3d 814 [2006]).
With respect to the weight of the evidence, defendant challenges the credibility of the victim, specifically pointing to inconsistences between the victim's testimony at trial and her [*3]testimony before the grand jury, as well as her statements to the police. Initially, it would not have been unreasonable for the jury to have resolved the credibility issues differently in this case and reached the opposite conclusion. However, these inconsistences — all of which were thoroughly explored on cross-examination — "neither undermined [the victim's] testimony in any meaningful respect nor rendered her testimony incredible as a matter of law" (People v St. Ives, 145 AD3d 1185, 1187 [2016] [internal quotation marks and citations omitted], lv denied 29 NY3d 1036 [2017]). Rather, any testimony from the victim at trial that differed from her grand jury testimony or her statements to the police presented a credibility issue for the jury to resolve (see People v Introne, 172 AD3d 1538, 1539 [2019]; People v Wells, 141 AD3d 1013, 1023 [2016], lvs denied 28 NY3d 1183, 1189 [2017]). According deference to the jury's credibility assessments, and viewing the evidence in a neutral light, we conclude that the verdict convicting defendant of attempted rape in the first degree is supported by the weight of the evidence (see People v Hackett, 167 AD3d 1090, 1093-1094 [2018]; People v Bautista, 147 AD3d 1214, 1216-1217 [2017]; People v Nehma, 101 AD3d at 1171; People v Shofkom, 63 AD3d 1286, 1287 [2009], lv denied 13 NY3d 799 [2009], lv dismissed 13 NY3d 933 [2010]).
We are unpersuaded by defendant's contention that County Court erred in denying his motion to suppress evidence obtained from his cell phone because his wife did not have common authority over it. The police may lawfully conduct a warrantless search by "'showing that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected'" (People v Gonzalez, 88 NY2d 289, 293 [1996] [brackets and emphasis omitted], quoting United States v Matlock, 415 US 164, 171 [1974]; see People v Adams, 53 NY2d 1, 8 [1981], cert denied 454 US 854 [1981]). Common authority is not to be construed "in any narrow property sense, but 'rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of such persons has the right to permit the inspection in his [or her] own right and that the others have assumed the risk that one of their number might permit the common area to be searched'" (People v Gonzalez, 88 NY2d at 293 [emphasis and brackets omitted], quoting United States v Matlock, 415 US at 171 n 7; see People v Loomis, 17 AD3d 1019, 1020 [2005], lv denied 5 NY3d 830 [2005]). The People have the burden of proving by a preponderance of the evidence that the facts available when the consent to search is provided reasonably warrant the belief that the consenting party had authority over the premises to be searched; "[i]f not, then warrantless entry without further inquiry is unlawful unless actual authority exists" (People v Gonzalez, 88 NY2d at 295 [internal quotation marks and citation omitted]).
At the suppression hearing, a police lieutenant testified that, when he interviewed defendant's wife at the police station, she informed him that she possessed a cell phone used by defendant. It was uncontroverted that defendant's wife owned the cell phone, that she was the account holder and that the cell phone was not password protected. According to the lieutenant, defendant's wife represented that she had taken the cell phone from defendant earlier in the evening in order to search its contents. Defendant's wife ultimately signed a consent form authorizing a search of the cell phone. These circumstances, especially the fact that defendant left the cell phone without password protection where it could be accessed by his wife, reasonably justified the investigator's belief that the wife had common authority to consent to a search of the cell phone (see Ghanbari v State of Texas, 2019 WL 1649455, *13, 2019 Tex App LEXIS 3119, *38-39 [Ct App Tex, Apr. 17, 2019, No. 05-17-00257-CR]; United States v Jackson, 2015 WL 4509452, *7 , 2015 US Dist LEXIS 97119 [ED Tenn, July 24, 2015, No. 1:14-CR-29], affd 700 Fed Appx 411 [6th Cir 2017]; see also United States v Eugene, 2018 WL 1158293, *2, 2018 CCA LEXIS 106, *5-6 [AF Ct Crim App, Feb. 28, 2018, No. ARMY 20160438], affd 78 MJ 132 [CAAF 2018]). Accordingly, County Court properly denied defendant's motion to suppress evidence taken from his cell phone.
We agree with defendant, and the People correctly concede, that County Court erred in directing that the sentence on the attempted rape in the first degree conviction run consecutively to the sentence imposed on the sexual abuse in the first degree conviction. Sentences may not run consecutively "(1) where a single act constitutes two offenses, or (2) where a single act [*4]constitutes one of the offenses and a material element of the other," and it is the People's burden to establish legality (People v Taveras, 12 NY3d 21, 25 [2009] [internal quotation marks and citation omitted]; see Penal Law § 70.25 [2]; People v Felipe, 79 AD3d 1454, 1456 [2010]). Here, the victim testified that defendant told her that he was "going to cum inside of [her]" and thereafter forced his fingers inside of her vagina. As the jury may have convicted defendant of sexual abuse in the first degree based upon the same act that constituted attempted rape in the first degree, we conclude that County Court should have ordered the sentences on those convictions to run concurrently (see People v Alford, 14 NY3d 846, 847-848 [2010]; People v Felipe, 79 AD3d at 1456). Defendant's remaining contention has been rendered academic by our decision.
Mulvey and Devine, JJ., concur.




Clark, J.P. (concurring).


We respectfully disagree with the majority's conclusion that County Court properly denied defendant's motion to suppress the evidence obtained from his cell phone. However, because we find the error to be harmless, we concur in the determination to affirm the judgment of conviction, as modified by the majority.
As the majority notes, the police may lawfully conduct a warrantless search upon obtaining permission "'from a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected'" (People v Gonzalez, 88 NY2d 289, 293 [1996], quoting United States v Matlock, 415 US 164, 171 [1974] [emphasis omitted]). "Common authority rests on the 'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of [those persons] has the right to permit the inspection in his [or her] own right and that the others have assumed the risk that one of their number might permit the common [property] to be searched'" (People v Loomis, 17 AD3d 1019, 1020 [2005], lv denied 5 NY3d 830 [2005] [emphasis added], quoting United States v Matlock, 415 US at 172 n 7; see People v McMahon, 238 AD2d 834, 836-837 [1997]). Where the police believe that the consenting third party possessed common authority over the item to be searched, but he or she does not actually possess such common authority, the People bear the burden of proving, by a preponderance of the evidence, that the information available to the police at the time would cause a person of reasonable caution to form such belief (see People v Gonzalez, 88 NY2d at 295).
The hearing testimony established that defendant's wife had physical possession of defendant's cell phone during her police interview, that the cell phone was not password protected and that the wife had represented to the police that she was the account holder and owner of the cell phone. However, according to the lieutenant who interviewed her, the wife also represented that the cell phone was solely used by defendant and that she had a separate cell phone for her own personal use. There was no testimony as to the extent that the wife ordinarily had access to, usage of or control over the cell phone and its contents (compare United States v Eugene, 2018 WL 1158293, *2, 2018 CCA LEXIS 106, *5-6 [AF Ct Crim App, Feb 28, 2018, No. ARMY 20160438], affd 78 MJ 132 [CAAF 2018]). Nor was there sufficient information regarding the circumstances under which the wife came to physically possess the cell phone, such as whether defendant has provided the wife with the cell phone or whether he was even aware of such possession (compare United States v Eugene, 2018 WL 1158293 at *2, 2018 CCA LEXIS 106 at *5-6). In fact, the testimony demonstrated that the wife had taken the cell phone sometime prior to the interview in an attempt to confirm her suspicions of infidelity, thereby suggesting that she did not regularly use, have access to or control over the cell phone, despite her status as the account holder. Given the scope of the privacy interests at stake — due to the fact that today's cell phones contain "a digital record of nearly every aspect of [a person's] li[fe]" (Riley v California, 573 US 373, 375 [2014]) — it is our opinion that the evidence presented by the People falls far short of establishing that the wife had actual authority to consent to the warrantless search of defendant's cell phone or that the police had a reasonable basis for [*5]believing that she and defendant shared common authority over the phone (see People v Gonzalez, 88 NY2d at 294-296; compare People v Loomis, 17 AD3d at 1020). As such, County Court should have granted defendant's motion to suppress the evidence found on his cell phone (see People v Holmes, 89 AD3d 1491, 1492 [2011]). Nevertheless, because there was overwhelming proof of defendant's guilt and because the evidence obtained from defendant's cell phone was cumulative of the lawfully acquired evidence from the victim's cell phone, there is no reasonable possibility that the admission of the tainted evidence might have contributed to defendant's conviction and, thus, the error was harmless beyond a reasonable doubt (see People v Burdine, 147 AD3d 1471, 1472 [2017], lv denied 29 NY3d 1076 [2017]; see generally People v Crimmins, 36 NY2d 230, 237 [1975]). Accordingly, as County Court's error does not require reversal of the judgment of conviction and because we agree with the majority in all other respects, we concur.
Aarons, J., concurs.
ORDERED that the judgment is modified, on the law, by directing that defendant's sentence for sexual abuse in the first degree under count 2 of the indictment shall run concurrently to the sentence for attempted rape in the first degree under count 1 of the indictment, and, as so modified, affirmed.



Footnotes

Footnote 1: Defendant was also sentenced to various periods of postrelease supervision.