People v Perulli (2023 NY Slip Op 03264)

People v Perulli

2023 NY Slip Op 03264

Decided on June 15, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 15, 2023

112308
[*1]The People of the State of New York, Respondent,
v
Jason Perulli, Appellant.

Calendar Date:May 2, 2023

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher and McShan, JJ.

Mitchell S. Kessler, Cohoes, for appellant.
Brian Conaty, Acting District Attorney, Monticello (Danielle K. Blackaby of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Sullivan County (Frank J. LaBuda, J.), rendered December 12, 2019, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree (three counts), criminally using drug paraphernalia in the second degree and aggravated unlicensed operation of a motor vehicle in the third degree.
In 2010, defendant pleaded guilty to criminal possession of a controlled substance in the third degree and criminal possession of a weapon in the second degree. He was sentenced to a prison term of 8½ years to be followed by five years of postrelease supervision. In 2018, approximately one year after he was released to parole supervision, the police were conducting surveillance on defendant when he was observed operating a motor vehicle without a license and was arrested. While he was in custody at the police station, a detective went to defendant's residence and obtained the consent of defendant's wife to search the premises. During the search of a bedroom shared by defendant and his wife, the police discovered more than eight ounces of cocaine, over 1,000 individual bags of heroin and digital scales in a box under the bed, as well as approximately $8,000 in cash under the mattress. The wife was taken into custody, but she was released after defendant confessed to his ownership of the box's contents.
Defendant was charged by indictment with criminal possession of a controlled substance in the first degree (count 1), three counts of criminal possession of a controlled substance in the third degree (counts 2, 3 and 4), criminal use of drug paraphernalia in the second degree (count 5) and aggravated unlicensed operation of a motor vehicle in the third degree (count 6). The wife passed away shortly after the indictment was handed down. Thereafter, defendant moved to suppress the box and its contents, which was denied by County Court after a hearing. Defendant separately moved to suppress certain recorded statements made during his custodial interrogation and the People cross-moved for a Molineux ruling relating to his prior conviction for drug possession. County Court granted defendant's application to redact certain statements from the recording. However, the court also conditionally granted the People's cross-motion, permitting them to use certain redacted portions of the recording or evidence of defendant's prior crimes in the event that he opened the door to their use by, for example, blaming his deceased wife. Defendant proceeded to a jury trial and was convicted as charged. County Court sentenced defendant, as a second felony offender, to an aggregate prison term of 42 years with 10 years of postrelease supervision. Such sentence was calculated by running count 1 and count 2 consecutively, and the remaining counts concurrently with count 2. Defendant appeals.
Defendant contends that County Court erred [*2]in denying his motion to suppress the evidence resulting from the search of his residence. Specifically, he contends that, although his wife had consented to the search of the residence, the People failed to demonstrate that the wife had actual or apparent authority to consent to a search of the box underneath the bed. We disagree. "Even in the absence of a warrant, police may lawfully search a residence where an inhabitant with apparent authority to consent to the search freely and voluntarily does so" (People v Grillo, 128 AD3d 1103, 1104-1105 [3d Dept 2015] [citations omitted]). "Common authority is not to be construed 'in any narrow property law sense, but rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of such persons has the right to permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit the common area to be searched' " (People v Butkiewicz, 175 AD3d 792, 796 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 1076 [2019], quoting People v Gonzalez, 88 NY2d 289, 293 [1996]). "Where the searching officers rely in good faith on the apparent capability of an individual to consent to a search and the circumstances reasonably indicate that that individual does, in fact, have the authority to consent, evidence obtained as a result of such a search should not be suppressed" (People v Lancaster, 143 AD3d 1046, 1050 [3d Dept 2016] [internal quotation marks, brackets and citations omitted], lv denied 28 NY3d 1147 [2017]). "The People have the burden of proving by a preponderance of the evidence that the facts available when the consent to search is provided reasonably warrant the belief that the consenting party had authority over the premises to be searched; 'if not, then warrantless entry without further inquiry is unlawful unless actual authority exists' " (People v Butkiewicz, 175 AD3d at 796 [brackets and emphasis omitted], quoting People v Gonzalez, 88 NY2d at 295).
At the suppression hearing, a detective testified that defendant and his wife were known to law enforcement and that the police were surveilling their residence for drug activity after receiving complaints of same. It was uncontroverted that the wife consented to and was present for the entire search, including of the master bedroom that was shared by the wife and defendant. Although the wife initially told the police that she believed that defendant kept his narcotics in the shed, a search of which yielded no results, her only objection to the remaining search of the residence was the inclusion of a K9 unit inside of the home. Once in the master bedroom, where the wife confirmed to detectives that she slept the night before, the police located a plastic bag of money under the mattress. According to the detective, he then observed a box under one side of the bed that [*3]was visible without having to bend down to look underneath the bed. When he picked up and opened the unlocked box, he found the narcotics and digital scales. After the wife was taken into custody and the search stopped, she claimed that the contents of the box were not hers — a claim substantiated by defendant, who admitted that the narcotics in the box were his and he provided investigators with a general amount present. Given these circumstances, especially the fact that defendant left the box in the shared bedroom where it could be seen by the wife without having to bend down and therefore could be accessed by her, County Court properly found that the wife possessed the requisite authority to consent to the search of the residence and that the police officers' belief regarding the wife's authority was reasonable (see People v Butkiewicz, 175 AD3d at 796; People v Lancaster, 143 AD3d at 1050; see also People v Adams, 53 NY2d 1, 9 [1981], cert denied 454 US 854 [1981]; compare People v Gonzalez, 88 NY2d at 297). Accordingly, County Court properly denied defendant's motion to suppress the box and its contents.
Defendant also contends that County Court violated his right to a fair trial when it admitted evidence of his prior conviction of criminal possession of a controlled substance in the third degree and his parole status, which he contends was used by the People to argue propensity in violation of the court's pretrial Molineux ruling. "It is well settled that the Molineux rule requires that evidence of a defendant's prior bad acts or crimes be excluded unless it is probative of a material issue other than criminal propensity and its probative value outweighs the risk of prejudice to the defendant" (People v Gaylord, 194 AD3d 1189, 1192 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 972 [2021]). However, "[s]uch evidence may be admitted if it falls within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Lafountain, 200 AD3d 1211, 1214 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 951 [2022]).
Here, with respect to the evidence of defendant's prior conviction, defense counsel opened the door to such evidence in her opening statement by shifting blame to the deceased wife and therefore controverting whether defendant exercised dominion and control over the narcotics found in the residence (see People v Smith, 173 AD3d 1441, 1444 [3d Dept 2019], lv denied 34 NY3d 954 [2019]; People v Smith, 157 AD3d 978, 980 [3d Dept 2018], lv denied 31 NY3d 1087 [2018]). County Court properly allowed the People to use the prior conviction to show motive, intent and common plan or scheme, and defense counsel ultimately stipulated to informing the jury of such prior conviction [*4]with the proper limiting instruction (see People v Valentin, 29 NY3d 150, 154, 157 [2017]). Similarly, as it relates to defendant's multiple addresses and the motel key found in defendant's belongings, defense counsel's cross-examination of the detective leading the investigation sought to undermine the sufficiency of that investigation and, therefore, opened the door to defendant's parole status as a justification for law enforcement's decision to not search the second address but instead focus on the residence that was not listed with the parole department (see People v Rojas, 97 NY2d 32, 39 [2001]; People v Tarver, 202 AD3d 1368, 1370 [3d Dept 2022], lv denied 39 NY3d 1114 [2023]; People v Bonaparte, 196 AD3d 866, 869 [3d Dept 2021], lv denied 37 NY3d 1025 [2021]). Given that County Court engaged in the proper weighing of the probative value versus prejudicial effect, and further precluded the People from offering certain details of the prior conviction or sentence while issuing appropriate limiting instructions to the jury, we discern no basis to disturb County Court's Molineux ruling or find that the court erred in admitting such evidence (see People v Valentin, 29 NY3d at 157; People v Smith, 173 AD3d at 1444; see also People v Watson, 150 AD3d 1384, 1386 [3d Dept 2017], lv denied 29 NY3d 1135 [2017]).
Next, defendant contends that he received the ineffective assistance of counsel, specifically as it relates to his counsel's failure to request a Sandoval hearing. In order to sustain a claim of ineffective assistance of counsel, "a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Reichel, 211 AD3d 1090, 1091 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1113 [2023]; see People v Agan, 207 AD3d 861, 870 [3d Dept 2022], lv denied 38 NY3d 1186 [2022]). "As long as the defense reflects a reasonable and legitimate strategy under the circumstances and evidence presented, even if unsuccessful, it will not fall to the level of ineffective assistance" (People v Benevento, 91 NY2d 708, 712-713 [1998] [citation omitted]; see People v LaDuke, 204 AD3d 1083, 1089 [3d Dept 2022], lv denied 38 NY3d 1072 [2022]). Relevantly, the failure to request a pretrial hearing — including a Sandoval hearing — does not necessarily constitute ineffective assistance of counsel, especially where such motion or argument "has little or no chance of success" (People v Stultz, 2 NY3d 277, 287 [2004]; see People v Thiel, 134 AD3d 1237, 1240 [3d Dept 2015], lv denied 27 NY3d 1156 [2016]; compare People v Miller, 11 AD3d 729, 730 [3d Dept 2004]).
Here, although we recognize that "[t]he failure to obtain a Sandoval ruling is notable" (People v Miller, 11 AD3d at 730), defendant has not made a showing that his counsel's decision lacked a strategic or other legitimate explanation[*5](see People v Thiel, 134 AD3d at 1240). Rather, the record reflects that defense counsel was successful in suppressing certain recorded statements that defendant made to the police and obtained a favorable pretrial Molineux ruling relating to his prior conviction. Knowing what aspects of the prior conviction could be shielded or waived by the Molineux ruling, defense counsel used only certain statements to present a rational defense that the wife was responsible for the narcotics — despite the fact that defendant confessed to the police that they were his in a recorded statement — therefore opening the door to some but not all of the aspects of the prior conviction. Even though this defense ultimately proved unsuccessful, given the nature of the defense relying solely on defendant's credibility and that defendant's prior conviction was recent and probative of defendant's credibility and honesty, defense counsel also had little or no chance of being successful in a Sandoval application precluding the introduction of the prior conviction (see People v Warrington, 146 AD3d 1233, 1238-1239 [3d Dept 2017], lv denied 29 NY3d 1038 [2017]; see also People v Stultz, 2 NY3d at 287; People v Thiel, 134 AD3d at 1240). Based on the foregoing and our review of the totality of the record, and considering the evidence against him, we find that defendant received meaningful representation (see People v Agan, 207 AD3d at 870; People v LaDuke, 204 AD3d at 1089; People v Thiel, 134 AD3d at 1240-1241).
Lastly, as conceded by the People and confirmed by our review of the record, the sentences on count 1 and count 2 should have been imposed concurrently rather than consecutively (see Penal Law 70.25 [2]; see also People v Parker, 203 AD3d 1341, 1342-1343 [3d Dept 2022]). Accordingly, we modify the judgment of conviction to run the sentences on all counts concurrently. We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Aarons, J.P., Pritzker, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is modified, on the law, by directing that defendant's sentences on count 1 and count 2 shall run concurrently rather than consecutively, and, as so modified, affirmed.